# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 17, 2004 Session

## LAURA STOHL HALKIADES v. DAVID ALLAN HALKIADES, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-0743-3     D. J. Alissandratos, Chancellor**

---

### No. W2004-00226-COA-R3-CV - Filed December 29, 2004

---

This appeal arises from a divorce action.  Defendant/Dr. Halkaides appeals the trial court's order dividing the parties' property and debt and awarding Wife/Ms. Stohl alimony.  He also asserts the trial court erred in finding Dr. Halkaides had dissipated the parties' marital assets.  We affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Dan T. Bing, Memphis, Tennessee, for the appellant, David Allan Halkaides.

Amy J. Amundsen, Memphis, Tennessee, for the Appellee, Laura Stohl Halkaides.

### OPINION

The parties to this divorce action, Dr. David Allan Halkaides (Dr. Halkaides) and Laura Stohl Halkaides (Ms. Stohl)[1] were married in 1992.  At the time of the marriage, Ms. Stohl was 41 years of age and Dr. Halkaides was 26 years of age.  No children were born of the marriage.   Ms. Stohl is a nurse; Dr. Halkaides is an optomistrist.

In April 2003, Ms. Stohl filed a complaint for divorce.  In her complaint, Ms. Stohl alleged Dr. Halkaides had failed to discontinue an extra-marital relationship with an employee of his business, Dr. Halkaides Eyes for You.  She further alleged that Dr. Halkaides' paramour had threatened her.  Ms. Stohl additionally alleged that Dr. Halkaides was misappropriating and dissipating funds from the Eyes for You business, a business in which Dr. Halkaides held fifty-one

---

[1]Laura Stohl Halkaides was restored to her maiden name, Laura Stohl, by order of the trial court on December 4, 2003.

percent of the stock and Ms. Stohl held forty-nine percent of the stock. She asserted Dr. Halkaides had used corporate funds to pay for non-business items such as motor vehicles and hotel bills. Ms. Stohl prayed for the court to enjoin Dr. Halkaides from spending monies not necessary for the operation of the business and to appoint a special master to review the corporate records. In his answer, Dr. Halkaides denied Ms. Stohl's allegations and counter-claimed for divorce based on irreconcilable difference and inappropriate marital conduct.

The trial court entered a consent order appointing a special master in May 2003. On May 28, the general sessions court entered a judgment against Dr. Halkaides for past due rent at the business premises. In June 2003, Dr. Halkaides closed his business and posted a sign that Eyes for You was closed due to unforeseen circumstances. He vacated the Eyes for You premises, but left certain property behind. Dr. Halkaides asserts he lost control of his Eyes for You business in June 2003 due to (his own) bad management. He further asserts that, after June 2003, the business had a value of zero. Ms. Stohl submits Dr. Halkaides purchased the practice from a long-time friend and associate, Dr. David Goldstein (Dr. Goldstein) in 2001, and then turned his practice back over to Dr. Goldstein in June 2003. She asserts that after he hung a "CLOSED" sign on his business, Dr, Halkaides left town with a fully loaded vehicle and that for ten days no one knew his whereabouts.

In July 2003, the trial court entered an order granting the special master access to Dr. Halkaides' Eyes for You. The court ordered the master to conduct a full inventory of the contents of the business. In its order, the court noted that Dr. Halkaides could not be located by counsel and had left the city (Memphis).

The special master reported that Dr. Halkaides had informed him that he planned to "voluntarily return" the business to Dr. Goldstein on June 21, 2003. Dr. Halkaides failed to inform the master, however, that he had been evicted from the premises pursuant to a detainer warrant for being over three months delinquent on his rent. The master further reported that he went to the Eyes for You office on June 24, 2003, to discuss the monitoring of the business, but when he arrived he found the business had been closed and that a "closed due to unforeseen circumstances" sign had been posted on the door.

As ordered by the court and with the consent of the landlord, the master inspected the Eyes for You premises on July 8, 2003. The master determined that key business records, computers, and videotapes from the security system were missing. The master also found that many pairs of eye glasses that had been paid for by patients remained in the office, and that patients were coming to the office to pick them up. Upon recommendation of the master, the business was re-opened with Dr. Goldstein executing a new lease, and the pre-paid orders were filled.

The special master reported that he received "minimal documentation" from Dr. Halkaides and his associates regarding the Eyes for You business. He reported that Dr. Halkaides did not have the usual accounting and filing systems expected of a medical practice, and that the business received a large portion of its payments in cash. The master reported, however, that he was unable to locate any cash. Additionally, the master reported that the "Day Sheets" used to keep track of the

customers and which formed the basis of Dr. Halkaides accounting system were in complete disarray and did not include totals of the daily sales. The master also reported that there were no monthly or yearly ledgers.

The special master reported that, as a result of the scanty and disorganized documentation, he had to spend a considerable amount of time computing the probable worth of the Eyes for You business. He reported,

> [t]he [s]pecial [m]aster's determination of 50% of total gross revenue as the proper formula for valuing the business is corroborated by Dr. Halkaides . . . . Dr. Halkaides agreed to pay Dr. Goldstein $600,000 for the business, which is approximately 50% of the business's annual gross revenue at the time of purchase. Dr. Halkaides, therefore, apparently believed that 50% gross annual sales was a fair value for this type of business because he agreed to pay that amount in 2001.

Working with the data provided to him by Dr. Halkaides, the master determined the annual gross revenue of Dr. Halkaides Eyes for You to be $1,300,442.56. Multiplying this by 50 percent, the master determined the fair market value of the business to be $650,221,28.

The trial court granted the parties a divorce on December 4, 2003. It awarded the parties' residence to Ms. Stohl, finding Dr. Halkaides had waived all interests in the home at the time of purchase. The court awarded the furnishings of the home and personal property remaining in the residence to Ms. Stohl, and awarded Dr. Halkaides personal property in his possession. The trial court found the special master's report to be credible and determined Dr. Halkaides had embezzled cash from his practice and dissipated assets of at least $100,000. The court awarded Ms. Stohl $50,000 of this amount, payable as alimony. It also awarded Ms. Stohl an additional $50,000 as transitional alimony and $12,500 as back alimony. By consent of the parties, the trial court ordered that Ms. Halkaides would receive title to one vehicle; the bank account in her name; her retirement fund; and debts and liabilities held in her name. Also by consent, the court awarded Dr. Halkaides bank accounts held in his name, and assigned him his school loans and liabilities held in his name. The court ordered Dr. Halkaides to transfer his life insurance policies to Ms. Stohl. The court ordered that all debts and obligations of Dr. Halkaides Eyes for You would be the responsibility of Dr. Halkaides. It further ordered Dr. Halkaides to indemnify and hold Ms. Stohl harmless for any and all debts, liens, and liabilities of the business. The court divided $103,000 debt held in Ms. Stohl's name, ordering Dr. Halkaides to pay one-half of this amount to Ms. Stohl as alimony. Thus, the trial court awarded Ms. Stohl $187,500, payable as alimony at a rate of $2,500 per month, non-modifiable, and terminable only upon full payment. The court also awarded Ms. Stohl her attorney's fees as additional alimony. It also ordered that Dr. Halkaides would be solely responsible for the costs associated with the special master and discretionary costs. Dr. Halkaides filed a timely notice of appeal to this Court.

## *Issues Presented*

Dr. Halkaides presents the following issues, as restated, for review:

(1)     Whether the trial court erred in finding Dr. Halkaides embezzled, secreted, or absconded with funds from Dr. Halkaides Eyes for You.

(2)     Whether the trial court erred in stating that the total amount of debt of Wife at the time of trial was $103,000.

(3)     Whether the trial court erred in its award and amount of alimony of all types.

(4)     Whether the trial court erred in failing to make an equitable distribution of the marital estate.

(5)     Whether the trial court erred in ordering Dr. Halkaides to pay Wife's attorney's fees.

Ms. Stohl requests attorney's fees incurred for this appeal.

## *Standard of Review*

We review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R.App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000). Because it is in the best position to assess witnesses, we afford the trial great considerable deference on matters of witness credibility. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999).
Thus, we will not reverse the trial court's findings insofar as they are based on issues of witness credibility in the absence of clear and convincing evidence to the contrary. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). We review an award of alimony under an abuse of discretion standard. *Id.* If a discretionary decision is within a range of acceptable alternatives, appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *White v. Vanderbilt University*, 21 S.W.3d 215, 223 (Tenn. Ct. App.1999). We review the trial court's discretionary decisions to determine: (1) whether the decisions are supported by the facts in evidence; (2) whether the trial court identified and applied the applicable legal principles; (3) whether the trial court's decisions are within the range of acceptable alternatives. *Id.*

## *Dissipation of Marital Assets*

The trial court found Dr. Halkiades had dissipated the parties' marital assets that were connected to his business.[2] The trial court found:

> Dr. Halkaides conspired to secrete assets of the business; and the [c]ourt finds that over Seventy Thousand Dollars ($70,000.00) in cash this year alone has been secreted by Dr. Halkaides. The [c]ourt finds other assets have been dissipated by Dr. Halkaides to total at least One Hundred Thousand Dollars ($100,000.00) . . . and embezzled out of the business, Dr. Halkaides' Eyes for You."

The trial court awarded Ms. Stohl one-half of $100,000 of the dissipated funds, to be paid as alimony.

On appeal, Dr. Halkaides asserts the trial court erred in finding he had dissipated the parties' assets. He asserts that he lost the assets of his business due to poor management, albeit his own, rather than as a result of purposeful dissipation or secreting. When considering whether a party in a divorce action has dissipated the parties' marital assets, the trial court must "distinguish between what marital expenditures are wasteful and self-serving and those which may be ill-advised but not so far removed from 'normal' expenditures occurring previously within the marital relationship to render them destructive." *Ward v. Ward*, No. W2003-01630-COA-R3-CV, 2004 WL 787158, at *2 (Tenn. Ct. App. April 12, 2004)(quoting *Ward v. Ward*, No. W2001-01078-COA-R3-CV, 2002 WL 31845229, at *3 (Tenn. Ct. App. Dec. 19, 2002)).

In *Ward*, we recently held that a finding of fraud is not required for a finding of dissipation of marital assets. *Id.* Rather, when determining whether a party has dissipated marital assets, the trial court should consider the following factors: (1) whether the evidence supports the alleged purpose of the expenditures, and, if so, (2) whether the alleged purpose constitutes dissipation under the circumstances. To satisfy the first, objective prong of this test, the spouse accused of dissipation may bring forward evidence such as receipts, vouchers, claims, and other similar evidence that independently support the alleged purpose of the expenditures. The second prong of the test requires the trial court to make an equitable determination based upon a number of factors including: (1) whether the expenditure was typically made during the marriage; (2) who benefitted from the expenditure - whether the expenditure primarily benefitted the marriage or the allegedly dissipating spouse; (3) the proximity of the expenditure to the breakdown of the marital relationship; (4) the amount of the expenditure. *Id.* (citing Lee R. Russ, Annotation, *Spouse's Dissipation of Marital Assets Prior to Divorce as a Factor in Divorce Court's Determination of Property Division*, 41 A.L.R. 4th 416, 420-21 (1985)).

---

[2]Dr. Halkaides does not contend that his business was not marital property.

Upon review of the evidence, we agree that Ms. Stohl satisfied her burden of demonstrating that considerable sums simply disappeared from the Eyes for You business.[3] Indeed, Dr. Halkaides does not contend that these sums were not removed from the business, but asserts that considerable amounts of cash, which were not deposited into the business bank account, were used for business purposes such as paying employees. However, Dr. Halkaides simply has failed to bring forth credible evidence demonstrating that the funds were used legitimately and not dissipated. For example, no payroll or tax records were introduced to support Dr. Halkaides' assertion that the cash was used for payroll. Moreover, the trial court determined that both Dr. Halkaides and his paramour, Ms. Julia Payne, who was an employee of Dr. Halkaides Eyes for You, were "knowing and willful perjurer(s)" and not credible.[4] It further found the special master's report to be credible with respect to the fact that about fifty percent of Dr. Halkaides' business was a cash business. The trial court additionally noted that the special master's work was made much more cumbersome by "the connivance and contrivances of Dr. Halkaides." The trial court further noted that Dr. Halkaides had failed to call his business associate, Dr. David Goldstein, as a witness and, applying the missing witness rule, concluded that Dr. Goldstein's testimony would not have supported Dr. Halkaides' testimony. We afford great deference to the trial court's determinations on matters of witness credibility, and the evidence does not preponderate against the trial court's findings that Dr. Halkaides dissipated at least $100,000 in marital assets. We accordingly affirm the judgment of the trial court awarding Ms. Stohl $50,000, payable as alimony *in solido*.

### *Alimony*

Dr. Halkaides contends the trial court erred in awarding Ms. Stohl alimony. Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. The need of the recipient spouse, followed by the obligor's ability to pay, are the primary considerations in the determination of an award of alimony. *Sullivan v. Sullivan*, 107 S.W. 3d 507, 510 (Tenn. Ct. App. 2002). In making its determination of an alimony award, the court must balance several statutory factors including those enumerated in section 36-5-101(d)(1) of the Tennessee Code.[5]

---

[3] There was evidence that a portion of these sums were used for expenditures such as the purchase of a car for Dr. Halkaides paramour and hotel bills.

[4] The trial court found Dr. Halkaides guilty of criminal contempt for the act of perjury and for disrupting the proceedings of the court and "sentence[d] Dr. Halkaides to be immediately remanded to the sheriff . . . and to be released at 6:00" the next morning.

Additionally, the trial court ordered:

As a result of finding Dr. Halkaides embezzling monies and Dr. Halkaides' failure to file the appropriate income tax returns, the Court has prima facie evidence of the commission of a felony and therefore requires Counsel for the Plaintiff to report Dr. Halkaides' activities to the Internal Revenue Service."

[5] The Code in effect at the time of the trial court's order in December 2003 provided:

(d)(1)(A) Spouses have traditionally strengthened the family unit through private arrangements

(continued...)

whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

(B) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(C) It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties. Where there is relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection (d), the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). An award of periodic alimony may be made either in addition to a rehabilitation award, where a spouse may be partially rehabilitated as defined in this subdivision (d)(1)(C), or instead of a rehabilitation award, where rehabilitation is not feasible. When appropriate, the court may also award transitional alimony as provided in subdivision (d)(1)(D).

Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido, periodic alimony, and transitional alimony. An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of a substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

(D) Transitional alimony means a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. Transitional alimony shall terminate upon the death of the recipient and as provided in subdivision (a)(3) which provision shall apply to transitional alimony. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The court may at the time of entry of the order to pay transitional alimony, order that it may terminate upon the occurrence of other conditions such as, but not limited to, the remarriage of the party receiving transitional alimony. Transitional alimony shall be nonmodifiable unless the parties otherwise agree in an agreement incorporated into the initial order of divorce, legal separation or order of protection or the court otherwise orders in the initial order or divorce, legal separation or order of protection. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to

(continued...)

*Id.* at 511. The trial court has broad discretion in determining the type, amount, and duration of alimony based upon the particular facts of each case. *Id.* The amount of alimony is largely within the discretion of the trial court. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). This Court is not inclined to alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

The trial court found,

> [a]fter considering all of the factors of T.C.A. 36-5-101 . . . the [c]ourt finds that [Ms. Stohl] is entitled to alimony to adjust to the economic consequences of a divorce. The [c]ourt finds that Dr. Halkaides agreed during the course of the marriage that [Ms. Stohl] could seek a Master's degree. Ms. [Stohl] has been doing that for approximately four years and has two more years of schooling. The [c]ourt finds that it would be inappropriate for her to be denied that opportunity but the [c]ourt finds that [Ms. Stohl] could work part-time while attending school. Ms. [Stohl] needs spousal support to supplement her income from part-time work and pay for her education. Thus, [Dr. Halkaides] should pay alimony in the amount of Fifty Thousand Dollars ($50,000.00).

---

[5](...continued)

adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

   (E) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

   (i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

   (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

   (iii) The duration of the marriage;

   (iv) The age and mental condition of each party;

   (v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

   (vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

   (vii) The separate assets of each party, both real and personal, tangible and intangible;

   (viii) The provisions made with regard to the marital property as defined in § 36-4-121;

   (ix) The standard of living of the parties established during the marriage;

   (x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

   (xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

   (xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d) (Supp. 2003).

Although not labeled as a particular type of alimony, this award is clearly intended to both rehabilitate Ms. Stohl and to assist her in during the a transitional period. Upon review of the evidence, we find no abuse of discretion in the trial court's award of alimony. We accordingly affirm the trial court's award of $50,000 to Ms. Stohl, payable as transitional alimony. We additionally affirm the award of $12,500 as back alimony, payable as alimony *in solido*.

### *Division of Debt and Marital Property*

Ms. Stohl agrees that the trial court erred in its calculation of her debt at the time of trial. She submits the correct amount was $99,900, and not $103,000. Dr. Halkaides, however, asserts the trial court erred in first assigning one-half of a business-related debt to the Bank of Bartlett to him, and in then including this amount in the $103,000 total which the court divided in half. Essentially, Dr. Halkaides asserts the trial court calculated the Bank of Bartlett debt twice, first separately assigning one-half to him and then including it in the $103,000 total.

Upon review of the record, and specifically Ms. Stohl's Rule 14 affidavit, we find Ms. Stohl's debt at the time of trial to have been $99,900. This includes the Bank of Bartlett loan, which is labeled "capital for business," but does not include her attorney's fees. We agree that paragraph 28 of the trial court's decree is somewhat ambiguous. We accordingly affirm the division of the debt, but modify the amount owed to Ms. Stohl to $49,950. This amount includes the Bank of Bartlett load and the division of "other debt" held in Ms. Stohl's name for the benefit of the parties.

Dr. Halkaides also contends the trial court erred in dividing the parties' property. He submits that although he executed a deed of trust in favor of Ms. Stohl when the parties' home was purchased, the trial court erred in finding he had waived any interest in the marital home. He further argues that he supplied funds for the mortgage when Ms. Stohl was not working, and that he is entitled to a portion of the increase in the equity of the home. However, Dr. Halkaides fails to point this Court to any evidence in the record which would support his contentions. Further, he fails to cite to any portion of the record to indicate this issue was raised below. We cannot say the evidence preponderates against the trial court's finding that Dr. Halkaides waived any interest in the parties' marital home.

In light of the trial court's findings, we cannot say the evidence preponderates against the trial court's division of other property. Trial courts must seek an equitable division of marital property. An equitable division is not necessarily an equal one. *Powell v. Powell*, 124 S.W.3d 100, 107 (Tenn. Ct. App. 2003). "It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Id.* (quoting *Batson v. Baston,* 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Appellate courts generally give great weight to the trial court's determinations when dividing marital property. We are not inclined to disturb the trial court's decision unless the preponderance of evidence compels a different determination or the trial court's division results from an error of law or incorrect application of the statutory requirements. *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App.1996).

In this case, the trial court based its award of much of the property on the consent of the parties. By consent of the parties, the court awarded Ms. Stohl the parties' 1996 Ford Explorer, her retirement accounts valued at $33,099.25, and her bank account valued at $35.00. Also by consent, Dr. Halkaides was awarded the parties' 1996 Mustang and other property in his possession. Additionally, the trial court determined that Dr. Halkaides was totally and solely responsible for the loss of the parties' primary asset, the Eyes for You business. The trial court found this asset would have been worth in excess of $600,000 had Dr. Halkaides not misappropriated funds generated by cash sales and, generally, squandered the business. In light of the totality of the circumstances in this case, we cannot say the trial court's award was not equitable.

### *Award of Attorney's Fees*

Dr. Halkaides asserts the trial court erred by awarding Ms. Stohl $38,660.19 in attorney's fees. In a divorce case, an award of attorney's fees is treated as an award of alimony. When determining whether to award attorney's fees, the trial court must consider the same factors used when considering a request for alimony. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). An award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay those fees. *Id.* at 513. The questions of whether to award attorney's fees, and the amount thereof, are largely left to the discretion of the trial court. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn.1995). Upon appeal, we generally will not disturb the trial court's decision unless the evidence preponderates against it. *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App.1992). We find no abuse of discretion in this case. Ms. Stohl requests additional attorney's fees on appeal. We decline.

### *Holding*

The judgment of the trial court is affirmed as modified. We affirm the award to Ms. Stohl of $50,000 as her share of dissipated marital assets. This shall be paid as alimony *in solido* at the rate of $416.67 per month for 120 months, until paid in its entirety. We affirm the award of $12,500 of back, past-due alimony. This also shall be payable as alimony *in solido* and shall be paid at the rate of $1,000 per month for 12 and one-half months, until paid in full. We also affirm the award of $50,000 in transitional alimony to Ms. Stohl. This shall be payable over a three year period at the rate of $1,388.89 per month. The division of marital debt is modified to reflect that Dr. Halkaids shall pay to Ms. Stohl $49,950. This shall be payable as alimony *in solido* at the rate of $416.25 per month for approximately 120 months, until paid in full. The division of marital property is affirmed in its entirety. The award of attorney's fees is also affirmed, and shall be payable as alimony *in solido* at a rate of $644.33 per month for approximately 60 months, until paid in full. We agree with the trial court that this award, in its entirety, is not dischargeable (insofar as permitted by Federal bankruptcy law) and is subject to wage garnishment. Except for transitional alimony award payments, this award is not modifiable, except the payment periods may be extended or altered by agreement of the parties and after entry of a consent order in the trial court. Costs of this appeal are

taxed to the Appellant, David Allan Halkaides, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE