# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 24, 2008 Session

## JOANNE RUTH BEARB v. MICHAEL EDWIN BEARB

**Direct Appeal from the Chancery Court for Madison County**
**No. 57286     Allen W. Wallace, Judge**

---

**No. W2007-00402-COA-R3-CV - Filed February 28, 2008**

---

This appeal arises from a divorce case. The trial court awarded Wife a divorce based on adultery and awarded her alimony in futuro the amount of $5000 per month for ten years and $2500 per month thereafter. The trial court additionally awarded Wife alimony in solido in the amount of $100,000, and awarded Wife her attorney's fees. Husband appeals. We affirm the award of divorce to Wife and the alimony awards, but reverse the award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Harold F. Johnson, Jackson, Tennessee, for the appellant, Michael Edwin Bearb.

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellee, Joanne Ruth Bearb.

### MEMORANDUM OPINION[1]

The parties to this contentious divorce action, Joanne Ruth Bearb (Ms. Bearb) and Michael Edwin Bearb (Dr. Bearb) were married in 1989. At the time of the marriage, Ms. Bearb was thirty-four years of age, had a two-year associate's degree, and was employed as a nurse. Dr. Bearb was

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

thirty-three years of age when the parties were married, and was a cardiologist employed in an academic position at Georgetown University Hospital in Washington, D.C. Two children were born of the marriage in 1991 and 1997. Ms. Bearb has not worked since the birth of the parties' eldest child; Dr. Bearb practices cardiology in Jackson, Tennessee.

In April 2000, Ms. Bearb filed a complaint for divorce, asserting irreconcilable differences, inappropriate marital conduct, and adultery. Dr. Bearb answered in May, admitting to irreconcilable differences but denying that inappropriate marital conduct or adultery had occurred prior to irreconcilable differences arising. He further pled the affirmative defense of recrimination. In May 2000, the court entered an *ex parte* order of protection against Dr. Bearb and scheduled a hearing for May 16. At the hearing, the parties announced an agreement with respect to *pendente lite* spousal and child support and a temporary parenting plan. Under this agreement, Dr. Bearb provided *pendente lite* support to Ms. Bearb in the amount of $3,000 per month in addition to agreeing to pay the household expenses and debts. In January 2001, Ms. Bearb answered Dr. Bearb's counterclaim and asserted that the parties' irreconcilable differences arose out of Dr. Bearb's adultery. In September 2001, Dr. Bearb answered and asserted Ms. Bearb was guilty of inappropriate marital conduct.

The matter was tried in January, August and November 2001 before Madison County Chancellor Joe Morris. Chancellor Morris died during the pendency of the matter, but after the close of evidence. Judge Allen W. Wallace was appointed special judge in 2004. In March 2006, the trial court entered a show-cause order based on failure to prosecute. The parties responded to the show-cause order and asked that the matter not be dismissed; they agreed that the matter would be considered on the record. By final order entered on February 2, 2007, the trial court granted Ms. Bearb a divorce based on adultery and the Agreed Parenting Plan. The parties' valued property[2] was divided roughly equally, with each party receiving property valued at approximately $1,200,000. The trial court awarded Ms. Bearb alimony *in futuro* in the amount of $5000 per month for ten years and $2500 per month thereafter, or until death or remarriage. The trial court also awarded Ms. Bearb alimony *in solido* in the amount of $100,000, and attorney's fees in the amount of $17,780.35. Dr. Bearb filed a timely notice of appeal to this Court. We reverse the award of attorney's fees. The remainder of the trial court's order is affirmed.

### *Issues Presented*

In his brief to this Court, Dr. Bearb presents thirteen issues for our review. The issues as we slightly restate them are:

---

[2]Dr. Bearb does not dispute that the cardiology practice of which he is a 50% owner and which was begun during the course of the marriage was not valued, but was awarded solely to him.

(1)     Whether the trial court erred in awarding a divorce based on adultery to Ms. Bearb rather than declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129(b).

(2)     Whether the trial court erred in awarding Ms. Bearb alimony *in futuro* and not rehabilitative alimony or alimony *in solido*.

(3)     Whether the trial court erred in awarding Ms. Bearb alimony *in futuro* in the amount of $5,000 per month for ten years and $2500 per month thereafter, until death or remarriage, when Ms. Bearb prayed for alimony in the amount of $7,500 per month for five years, $5,000 per month for five years, and $3,000 per month for five years in her complaint.

(4)     Whether the trial court erred by awarding Ms. Bearb $100,000 as alimony *in solido* in addition to one-half the parties' property.

(5)     Whether the trial court erred by failing to give Dr. Bearb a credit for spousal and child support amounts paid prior to entry of the temporary and permanent support orders.

(6)     Whether the trial court erred in setting the award of alimony plus child support at an amount greater than Ms. Bearb's expenses.

(7)     Whether the trial court erred in failing to consider Ms. Bearb's earning capacity.

(8)     Whether the trial court erred in awarding Ms. Bearb's attorney's fees.

(9)     Whether the trial court erred in failing to credit Dr. Bearb for Ms. Bearb's attorney's fees paid from Dr. Bearb's funds.

(10)    Whether the trial court "appl[ied] the fault of Dr. Bearb in a punitive manner in determining the award of alimony."

### *Standard of Review*

We review the trial court's findings of fact *de novo*, with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, appellate courts will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v.*

*Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## *Analysis*

We turn first to Dr. Bearb's assertion that the trial court erred by granting a divorce to Ms. Bearb on the grounds of adultery, rather than declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129(b). Dr. Bearb's argument, as we perceive it, is that, given the difficulties of the parties' relationship over the course of the marriage, the trial court abused its discretion in failing to declare the parties divorced and in granting Ms. Bearb a divorce based on adultery. Dr. Bearb does not deny having engaged in an adulterous relationship beginning in 1999, but asserts that both parties were at fault in this marriage.

Section 36-4-129 provides:

(a) In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.
      (b) The court may, upon stipulation to or proof of any ground for divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

Tenn. Code Ann. § 36-4-129(2005).

In *Earls v. Earls*, this Court engaged in a lengthy discussion of the societal developments that precipitated the enactment of section 36-4-129. See *Earls v. Earls*, 42 S.W.3d 877, 881-83 (Tenn. Ct. App. 2000). To summarize, the section gives the trial courts the ability to declare parties divorced when it is clear that the conduct of one or both of the parties "makes continued cohabitation unacceptable" without assigning fault to one party. *Id.* at 883. The authority provided to the court by section 36-4-129, however, does not eviscerate section 36-4-101. The trial courts may continue to award divorces to one spouse based on demonstrated statutory grounds.

We addressed an argument similar to Dr. Bearb's in *Varley v. Varley*, 934 S.W. 2d 659 (Tenn. Ct. App. 1996). In that case, the trial court determined Wife had committed adultery and awarded a divorce to Husband alone. Wife asserted that the trial court erred in awarding the divorce to Husband alone and in failing to declare the parties divorced pursuant to section 36-4-129(b) because Husband had not pled adultery in his complaint for divorce and because the trial court failed to find the Husband less at fault. *Varley*, 934 S.W.2d at 665. We found no error in the trial court's award of a divorce to Husband in *Varley* where the issue of adultery had been tried by consent and where the evidence did not preponderate against the trial court's finding that Wife had committed adultery. *Id.* at 665.

We are not insensitive to Dr. Bearb's assertion that this marriage was a difficult one from the outset. Moreover, we find it unnecessary to elaborate on the parties' intimate relationship here. Dr. Bearb does not deny the adulterous relationship which appears to have been the "final straw" in this marriage. Dr. Bearb testified, moreover, that his extramarital relationship began in October 1999. The evidence does not preponderate against the trial court's determination that Dr. Bearb was guilty of adultery. We affirm the award of divorce to Ms. Bearb.

We next turn to Dr. Bearb's contention that the trial court erred in awarding Ms. Bearb alimony *in futuro* rather than rehabilitative alimony, and in awarding alimony in excess of the amount pled for in Ms. Bearb's complaint and asserted in her affidavit of expenses. Generally, the appropriateness of an award of alimony depends on the facts and circumstances of each case. The need of the recipient spouse and the obligor spouse's ability to pay are the primary considerations in the determination of an award of alimony. *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). In making its determination, the court must balance several statutory factors, including those enumerated in section 36-5-121(I) of the Tennessee Code. The type and amount of an alimony award are largely within the discretion of the trial court. *Burlew*, 40 S.W.3d at 470. This Court is not inclined to alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

We begin our review of the trial court's award of alimony in this case by noting that, in her complaint for divorce, Ms. Bearb prayed for an award of alimony *in solido* in addition to periodic *or* rehabilitative alimony "in an amount and for a period of time deemed proper under the circumstances and according to the Plaintiff's needs and Defendant's ability to furnish same." It was in the "Final Divorce Disposition Checklist," filed with the trial court while the matter was pending before Chancellor Morris, that Ms. Bearb asserted alimony should be awarded in the amount of $7,500 for five years, $5,000 for five years, and $3,000 for five years. In that checklist, Ms. Bearb asserted Dr. Bearb's income was approximately $40,000 per month.

Dr. Bearb does not contend that he is unable to pay alimony as ordered by the trial court. In his brief to this Court, he asserts a gross income of $400,000 per year. At the trial of this matter in 2001, however, Dr. Bearb testified that, in 2000, his gross income was $613,643. He nevertheless asserts that the award of alimony *in futuro* is inappropriate because Ms. Bearb is capable of being rehabilitated and of earning between $35,000 and $50,000 per year.

Clearly, Ms. Bearb is significantly economically disadvantaged in comparison to Dr. Bearb. Further, although the General Assembly has expressed a preference for rehabilitation of the economically disadvantaged spouse, it has defined rehabilitation as meaning

> to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tennessee Code Annotated § 36-5-121(d)(2)(2005). Upon review of the record in this case and in light of the factors enumerated at Tennessee Code Annotated 36-5-121(I), and mindful of the lengthy passage of time between the filing of this action and the final judgment, we cannot say the trial court abused its discretion in awarding Ms. Bearb alimony *in futuro* in the amount of $5,000 for ten years and $2,500 thereafter, or until death or remarriage. Ms. Bearb has an associate's degree and eight years of nursing experience. She will be 60 years of age when her youngest child reaches the age of majority. Even assuming she returns to work and is capable of earning $35,000 per year, as suggested by Dr. Bearb, Ms. Bearb will never attain an income level which will allow her to enjoy the marital standard of living. Additionally, Dr. Bearb testified in 2001 that the total household expenditures were approximately $12,000 per month, and we cannot agree with Dr. Bearb that the trial court erred in failing to consider Ms. Bearb's earning capcity. In considering the income disparity between the parties, the trial court stated, "[e]ven if she went to work today -somebody was talking about 35,000." Clearly, the trial court considered Ms. Bearb's earning capacity when determining the award of alimony. Additionally, in light of the foregoing, we do not believe the award of alimony is "punitive" as asserted by Dr. Bearb. We affirm the award of alimony *in futuro* in the amount awarded by the trial court.

We turn next to the award of alimony *in solido* in the amount of $100,000 to Ms. Bearb. Dr. Bearb asserts the trial court erred in awarding Ms. Bearb an additional property award of $100,000 as alimony *in solido* when the parties' marital property was divided equally. Ms. Bearb, on the other hand, asserts that the award was equitable because Dr. Bearb was awarded 100% of his cardiology practice, which was begun during the course of the marriage, as well as valuable sports memorabilia that was not included in the list of marital property.

After classifying property as separate or marital, the trial court must divide the marital property equitably between the parties in consideration of the statutory provisions provided at Tennessee Code Annotated § 36-4-121. The fairness of the property division is reflected in the end results, and a property division is not rendered unfair or inequitable merely because it is not precisely equal or because each party did not receive a share of every marital asset. Trial courts are afforded great discretion when dividing marital property. *E.g., Owens v. Owens*, No. M2005-00639-COA-R3-CV, 2007 WL 957184, at *6-7 (Tenn. Ct. App. Mar. 29, 2007), *perm. app. denied* (Tenn. Sept. 17, 2007).

The trial court's order reflects that Dr. Bearb was awarded his practice known as Cardiac Anesthesia Group. The "balance sheet" attached to the order, however, does not include this asset. As Ms. Bearb asserts, the business simply was not included in the division of property. Although it has not been valuated for purposes of the property division, it is undisputed that Dr. Bearb receives a substantial income from this practice. Further, although Dr. Bearb characterizes the $100,000 award of alimony *in solido* as an element of the division of property, Dr. Bearb fails to include in his brief for our review a table clearly illustrating the classification, value and division of property as required by Rule 7 of the Rules of the Court of Appeals. We find no abuse of discretion in the award of alimony *in solido* in the amount of $100,000 to offset the value of property awarded solely to Dr. Bearb.

We likewise cannot agree with Dr. Bearb that the trial court erred by not crediting him for *pendente lite* support paid in excess of the support amounts ordered in the final decree. Dr. Bearb agreed to pay Ms. Bearb $3,000 plus the household expenses while this matter was pending. Dr. Bearb's argument, as we understand it, is that Ms. Bearb should be awarded alimony for fifteen years, at most, beginning from the date the complaint was filed, and that he should be given a credit for the seven years of support paid during the pendency of this action. Further discussion of Dr. Bearb's argument is unnecessary in light of our holding with respect to the award of alimony *in futuro*.

We next turn to the award of attorney's fees to Ms. Bearb. An award of attorney's fees in a divorce case is treated as an award of alimony. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002)(citations omitted). When determining whether an award of attorney's fees is appropriate, the trial court must consider the statutory factors used when considering an alimony request, but need is the primary factor. *Id.* An award of attorney's fees is appropriate when one spouse is disadvantaged and does not have sufficient resources with which to pay those fees. *Id.* at 513. The questions of whether to award attorney's fees, and the amount thereof, are left largely within the discretion of the trial court. *Id.*

In light of the property division and alimony awards in this case, we are satisfied that Ms. Bearb has sufficient resources with which to pay her outstanding attorney's fees. We accordingly reverse the award of attorney's fees. It is therefore unnecessary for us to address Dr. Bearb's contention that the award results in a double award of part of the fees, which he asserts were paid as part of the household expenses.

### *Holding*

In light of the foregoing, we affirm the awards of alimony *in futuro* and alimony *in solido* in the amounts awarded by the trial court. We also affirm the award of the divorce to Ms. Bearb. The trial court's award of attorney's fees to Ms. Bearb is reversed. Ms. Bearb's request for attorney's fees on appeal is denied. Costs of this appeal are taxed to the Appellant, Michael Edwin Bearb, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE