**Kenneth W. SULLIVAN**

v.

**Linda R. SULLIVAN.**

Court of Appeals of Tennessee,
at Nashville.

August 7, 2002 Session.

Sept. 5, 2002.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 3, 2003.

Patricia R. Young, Brentwood, Tennessee, for the appellant, Kenneth W. Sullivan.

Ernest W. Williams and Anna E. Freeman, Franklin, Tennessee, for the appellee, Linda R. Sullivan.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

This appeal arises from a divorce action. The plaintiff/appellant appeals the division of marital property, award of alimony in futuro, amount of alimony, and award of attorney's fees. We affirm the award of alimony as modified herein, affirm the division of property, and reverse the award of attorney's fees.

Kenneth and Linda Sullivan were married in 1976 and have two adult children. Mrs. Sullivan holds a BS in education and home economics, with a focus on interior design. Dr. Sullivan is a family practice physician. The couple spent most of their married life in Louisiana, relocating to Tennessee in 1995. The couple was separated and reconciled twice prior to this

action, including a 1999 separation during which Mrs. Sullivan filed for divorce in Tennessee.

In September of 1999, Dr. Sullivan filed a complaint for divorce alleging irreconcilable differences and/or inappropriate marital conduct. Mrs. Sullivan admitted irreconcilable differences, denied inappropriate conduct, and counter-complained on the grounds of adultery and cruel and inhuman treatment. Mrs. Sullivan sought permanent alimony (including medical insurance), payment by Dr. Sullivan of all debts, and attorney's fees. Dr. Sullivan admitted to having a relationship after the parties' separation, but denied other fault allegations. The marital home was sold in December of 1999 and the proceeds were deposited with the Williamson County Clerk and Master.

When Dr. Sullivan filed his complaint, he was employed as a physician by the Franklin Medical Center with a base salary of $135,000. The Center closed in April of 2000 and Dr. Sullivan began a private practice which lost $68,000 in 2000. In April of 2001, Dr. Sullivan accepted a position with a pain management clinic at a salary of $110,000. He submits that the debts from his private practice were $93,000. Mrs. Sullivan worked early in the marriage, and has worked part time in interior design. Mrs. Sullivan suffers from scoliosis and arthritis, and has undergone several surgeries to her feet. Dr. Sullivan suffers from back problems and has mild coronary artery disease.

The trial court granted Mrs. Sullivan a divorce based on adultery and inappropriate marital conduct. The court awarded Mrs. Sullivan long-term alimony of $3,500 per month until death, remarriage or age 65, plus medical insurance premiums. Dr.

Sullivan was ordered to maintain a life insurance policy of $350,000, with Mrs. Sullivan designated as the beneficiary. The court awarded each party their separate property. Mrs. Sullivan received marital property valued at $139,069. The court allocated debt of $7,062 to Mrs. Sullivan. Dr. Sullivan was awarded property valued at $120,706, including a credit of $16,758 for *pendente lite* support. Dr. Sullivan was allocated $153,357 of debt. The court further allocated $17,000 of the proceeds from the sale of the marital home to pay Mrs. Sullivan's attorney's fees, and $10,000 of the proceeds to pay Dr. Sullivan's attorney's fees.[1]

## Issues

Dr. Sullivan raises the following issues, as we perceive them, for our review:

(1) Whether the court erred by awarding permanent alimony rather than rehabilitative alimony.

(2) Whether the award of alimony is excessive.

(3) Whether the property award is equitable.

(4) Whether the court erred by awarding her attorney's fees.

Mrs. Sullivan seeks modification of the alimony award to continue until remarriage or death and attorney's fees for this appeal.

## Standard of Review

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R.App. P. 13(d); *e.g., Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn.2000). We may not reverse the trial

---

1. While we find the trial court's order that Dr. Sullivan pay his own attorney's fees out of his portion of the proceeds from the marital home unusual, Dr. Sullivan does not raise this as an issue on appeal and we therefore do not address it here.

court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn.2000). We give great weight to the factual findings of the trial court which rest on determinations of witness credibility. *Randolph v. Randolph,* 937 S.W.2d 815, 819 (Tenn.1996). Accordingly, we will not reevaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents,* 9 S.W.3d 779, 783 (Tenn.1999).

### *The Award of Alimony*

■ Dr. Sullivan contends that the trial court erred in awarding Mrs. Sullivan permanent rather than rehabilitative alimony, and further contends that the amount of alimony is excessive. Mrs. Sullivan submits that the amount is not excessive, but that alimony should be awarded until death or remarriage. We review matters of alimony under an abuse of discretion standard. If the discretionary decision is within a range of acceptable alternatives,

appellate courts will not substitute their decision for that of the trial court simply because the appellate court would have chosen a different alternative. *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 223 (Tenn.Ct.App.1999). We review the trial court's discretionary decisions to determine: (1) whether the decisions are supported by the facts in evidence; (2) whether the trial court identified and applied the applicable legal principles; (3) whether the trial court's decisions are within the range of acceptable alternatives. *Id.*

■ Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. The need of the recipient spouse, followed by the obligor's ability to pay, are the primary considerations in the determination of an award of alimony. *Lancaster v. Lancaster,* 671 S.W.2d 501, 503 (Tenn.Ct.App. 1984); *Goodman v. Goodman,* 8 S.W.3d 289, 295 (Tenn.Ct.App.1999). In making its determination of an alimony award, the court must balance several statutory factors including those enumerated in section 36–5–101(d)(1) of the Tennessee Code.[2]

2. Section 36–5–101(d)(1) provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient.... Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of

term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

The trial court has broad discretion in determining the type, amount, and duration of alimony based upon the particular facts of each case. *Kinard v. Kinard,* 986 S.W.2d 220 (Tenn.Ct.App.1998). The amount of alimony is largely within the discretion of the trial court. *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn.2001). This Court is not inclined to alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

 Our statutes express a preference for an award of rehabilitative alimony. Tenn.Code Ann. § 36–5–101(d)(1)(2000); *Crabtree v. Crabtree,* 16 S.W.3d 356, 358 (Tenn.2000). The purpose of rehabilitative alimony is to provide an economically disadvantaged spouse temporary support for a period of time so that he/she may become and remain self-sufficient. *Loria v. Loria,* 952 S.W.2d 836, 838 (Tenn.Ct.App.1997); *Burlew,* 40 S.W.3d at 470–71. Rehabilitative alimony is intended to promote the self-sufficiency of the disadvantaged spouse by allowing him/her to acquire additional job skills, education, or training. *Kinard,* 986 S.W.2d at 234.

 Rehabilitative alimony is appropriate where the trial court finds that the recipient, disadvantaged spouse can be economically rehabilitated. *Crabtree,* 16 S.W.3d at 360. Where the court has determined that economic rehabilitation is not feasible and long-term support is therefore necessary, the court may award permanent, or *in futuro,* alimony. *Id.* at 359. The trial court is afforded wide discretion in the determination of whether rehabilitative or *in futuro* alimony should be awarded. *Id.* at 360.

The trial court awarded Mrs. Sullivan alimony *in futuro* of $3,500 until death, remarriage or age 65. In light of the length of this marriage, the work histories of the parties, their educational backgrounds, age and health status, we believe the award of alimony *in futuro* is appropriate. Upon review of the record, however, we believe that amount of alimony awarded is excessive. Dr. Sullivan earns an annual salary of $110,000, and there has been no finding in this case of voluntary underemployment. We find that Dr. Sullivan's ability to pay does not exceed $2,000 per month, and accordingly modify the amount of alimony *in futuro* to that amount. In light of Mrs. Sullivan's work history and health, and the relative earning capacities of these parties, we also modify the award to be payable until death or remarriage.

### Division of Marital Property

 Courts are required to divide marital property equitably, not equally, penny for penny. *See Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn.1988). An equitable division of property must reflect consider-

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36–4–121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–5–101(d)(1) (Supp. 2000).

ation of the factors enumerated in the Tennessee Code. The Code provides that in determining an equitable distribution of property, the trial court shall consider:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as a homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–4–121(c)(2001). Fault is expressly not to be regarded in the division of property. Tenn.Code Ann. § 36–4–121(a)(1) (2001). Trial courts are vested with a great deal of discretion when classifying and dividing the marital estate, and their decisions are entitled to great weight on appeal. *Goodman v. Goodman,* 8 S.W.3d 289, 298 (Tenn.Ct.App.1999). Accordingly, unless the court's decision is contrary to the preponderance of the evidence or is based on an error of law, we will not interfere with the decision on appeal. *Id.*

The trial court awarded Mrs. Sullivan marital property valued at approximately $139,069. The court allocated debt of $7,062 to Mrs. Sullivan. Dr. Sullivan was awarded property valued at $120,706, including a credit of $16,758 for *pendente lite* support. Dr. Sullivan was allocated $153,357 of debt, including the *pendente lite* support amount, $93,000 of business debt incurred post-separation, and $10,067 attached to the automobile he was awarded. We note that the Sullivans' primary marital asset was the marital home, which was sold for $107,478.78. Mrs. Sullivan was awarded $80,478.78 of the proceeds from the sale of the home; Dr. Sullivan was awarded proceeds of $27,000. Upon review of the record, and in consideration of the foregoing statutory provisions, this Court is satisfied with the division of marital property in this case. We accordingly affirm on this issue.

### *Award of Attorney's Fees*

 In a divorce case, an award of attorney's fees is treated as an award of alimony. *Kinard,* 986 S.W.2d at 235. When determining whether to award attorney's fees, the trial court must consider the same factors used when considering a request for alimony. *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn.Ct.App.1995). As with alimony, need is the primary fac-

tor. *Herrera v. Herrera,* 944 S.W.2d 379, 390 (Tenn.Ct.App.1996). An award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay those fees. *Id.* The questions of whether to award attorney's fees, and the amount thereof, are largely left within the discretion of the trial court. *Aaron v. Aaron,* 909 S.W.2d 408, 411 (Tenn.1995).

The trial court awarded Mrs. Sullivan $17,000 of attorney's fees. These fees were ordered to be paid from the $27,000 Dr. Sullivan was awarded from the proceeds of the marital home. In light of the division of marital property as discussed above, we are satisfied that Mrs. Sullivan has sufficient resources with which to pay her attorney's fees. We therefore reverse on this issue. Mrs. Sullivan's request for attorney's fees incurred by this appeal are denied.

### *Conclusion*

The award of alimony *in futuro* to Mrs. Sullivan is affirmed as modified to $2,000 per month until death or remarriage. The trial court's division of marital property is affirmed. The award of attorney's fees to Mrs. Sullivan is reversed. Costs of this appeal are taxed one-half to the appellee, Linda R. Sullivan and one-half to the appellant, Kenneth W. Sullivan, and his surety, for which execution may issue if necessary.