IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted On Brief January 12, 2005

## STEPHANIE R. ROEDEL v. KEVIN M. ROEDEL

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-02-1232-1      Walter L. Evans, Chancellor**

_____

**No. W2003-02972-COA-R3-CV - Filed February 7, 2005**

_____

The trial court denied the parties a divorce upon finding the Wife failed to prove inappropriate marital conduct. We reverse and remand for further proceedings.

**Tenn. R. App. P 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Lee Ann Pafford Dobson, Germantown, Tennessee, for the appellant, Stephanie R. Roedel.

Randall N. Songstad, Memphis, Tennessee, for the appellee, Kevin M. Roedel.

## OPINION

The parties to this divorce action, Stephanie R. Roedel (Ms. Roedel) and Kevin M. Roedel (Mr. Roedel) married in December 1992 and have four minor children. The parties separated in May 2002, and in June 2002, Ms. Roedel filed a complaint for divorce. In her complaint, Ms. Roedel alleged as grounds irreconcilable differences that prevent the parties from living together and inappropriate marital conduct on the part of Mr. Roedel. She further prayed for a division of the parties' property, to be designated the primary residential custodian of the parties' minor children, for alimony and attorneys fees.

In September 2002, the parties entered a consent order agreeing that Ms. Roedel would have exclusive use of the parties' marital home and that neither party would expose the children to persons the party may be dating. The trial court entered orders on *pendente lite* support and temporary child visitation in May 2003. The order on visitation provided, *inter alia*, that "[w]hen effecting said visitation, the father will approach the house, park in the driveway, and remain in the vehicle. The mother will send the children out to the vehicle. The father shall not . . . exit his vehicle and the mother shall not approach the vehicle." The trial court also entered an agreed mutual

order of protection on May 9, 2003, which enjoined the parties from "coming about each other for any purpose, and specifically from abusing, threatening to abuse, or from committing any acts of violence upon the other upon penalty of contempt, with the exception of the provisions set forth in the Consent Order on Visitation concerning the parties' four minor children." The order additionally ordered the parties to refrain from "committing acts of violence [on] the property of the other" and from "stalking the other as defined in Tenn. Code Ann. § 39-17-315." The order provided for arrest without warrant upon reasonable cause to believe either party had violated the order. The order was to remain in effect for a period of one year. In August 2003, the parties filed petitions for contempt of the court's orders.

Mr. Roedel filed an answer to Ms. Roedel's June 2002 complaint on October 16, 2003, the day of trial, but did not file a counter-complaint. Mr. Roedel denied the allegation of inappropriate marital conduct, raised the issue of adultery on the part of Ms. Roedel, and raised the misconduct of Ms. Roedel as a "justifiable cause for the conduct complained of" in Ms. Roedel's complaint. After hearing the matter, the trial court dismissed Ms. Roedel's complaint on October 29, 2003, upon finding that Ms. Roedel had failed to carry her burden of proof on the issue of inappropriate marital conduct. Ms. Roedel filed a timely notice of appeal to this Court.

### Issue Presented

Ms. Roedel raises the issue of whether the trial court erred by denying her a divorce based on the grounds of inappropriate marital conduct for our review.

### Standard of Review

We review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000). Because it is in the best position to assess witnesses, we afford the trial court considerable deference on matters of witness credibility. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999). Thus, we will not reverse the trial court's findings insofar as they are based on issues of witness credibility in the absence of clear and convincing evidence to the contrary. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App.2002).

### Analysis

Upon review of the evidence in this case, we agree with the trial court's assessment that there is plenty of "dirt" on both sides of this dispute. In its final judgment, however, the trial court stated only that:

[U]pon statements of counsel and upon all of the evidence produced in this matter, the Court finds that the Plaintiff has failed to prove grounds of inappropriate marital conduct therefore, this complaint is dismissed with costs being assessed against the Plaintiff, Stephanie Roedel. All previous orders of this Court are hereby dismissed."

It is not disputed that Ms. Roedel was engaged in an extra-marital relationship before this matter was heard, and that this relationship contributed to the ultimate and complete break-down of this marriage. However, we disagree with the trial court that Ms. Roedel failed to carry her burden of proving inappropriate marital conduct.

Grounds for divorce exist where "[t]he husband or wife is guilty of such cruel and inhuman treatment or conduct towards that spouse as renders cohabitation unsafe and improper which may also be referred to in pleadings as inappropriate marital conduct." Tenn. Code Ann. § 36-4-101(11)(2001). At trial, Ms. Roedel testified that Mr. Roedel had raped and physically abused her, that he had broken her finger during an altercation over a night-gown, and that he had been verbally and physically abusive to her in front of the parties' children.

Although Mr. Roedel's testimony at trial characterized his behavior as substantially different, Ms. Roedel's allegations of abuse was corroborated by the testimony of her step-father, Kenneth Powers (Mr. Powers), and mother, Rebecca Powers (Ms. Powers). Mr. Powers testified that in conversation between himself and Mr. Roedel, Mr. Roedel "tried to make light" of forcing Ms. Roedel to have non-consensual sex. When asked whether Mr. Roedel had admitted to the sexual abuse, Mr. Powers testified, "he (Mr. Roedel) pretty much owned up to the fact that he forced her to do that. He just didn't think anything was wrong with it because he was her husband." He further testified that he and Ms. Powers had seen the resultant bruises on Ms. Roedel, and that he and Mr. Roedel discussed Mr. Roedel's physical and mental abuse of Ms. Roedel. Mr. Powers stated, "Kevin [Mr. Roedel] just makes light of it." Mr. Powers testified that he had personally observed Mr. Roedel emotionally abuse Ms. Roedel and that he had "been on the tail end of some incidents where he [Mr. Roedel] has [been physically abusive], where he's beat holes in the door . . . pulled her hair out of her head." He additionally testified that Mr. Roedel would "get mad at her [Ms. Roedel] and wouldn't speak to her for days for no reason - - not a word to say to her." On direct examination, Mr. Powers was asked, "In the conversation about the rape, did Mr. Roedel admit that he had forced her." Mr. Powers answered, "Yes." Mr. Powers further testified to having personally witnessed Mr. Roedel being physically and verbally abusive to the parties' children.

Ms. Powers likewise testified to witnessing the results of Mr. Roedel's abusive behavior. Ms. Powers testified:

Stephanie would come over to the house [Ms. Powers'] with bruises and she had a black eye one time. . . . I saw her legs - - the inside of her legs bruised up. I saw chunks torn out of her hair. I saw holes in the wall and broken doors and Kevin's hand broken where he had been mad at her. And I saw clothes that had been -

-3-

underwear that had been torn off of her. . . . Underwear that had been ripped off of her.

We disagree with the trial court's statement at trial that the marital problems encountered by the parties during the course of their marriage have "not been unusual or to the extent that would warrant a separation between the parties." Although Mr. Roedel denied the allegations of non-consensual sex and abuse and testified that he broke Ms. Roedel's finger unintentionally during an argument, he offered no other witnesses or evidence to counter the tenure of the parties' marriage as characterized by Mr. Powers and Ms. Powers or to dispute their testimony regarding the evidence of physical abuse.

This Court must decide whether Ms. Roedel has proven that either or both of these parties engaged in conduct that makes continued cohabitation unacceptable. *See Earls v. Earls*, 42 S.W.3d 877, 883 (Tenn. Ct. App. 2000). As we observed in *Earls*, this inquiry is less difficult where the parties have themselves determined that cohabitation is unacceptable to them by choosing to live apart. *Id.* The parties in this case ended their cohabitation in May 2002. Further, Mr. Roedel's admitted extra-marital relationship early in the marriage, the testimony regarding the course of conduct between the parties throughout the marriage, and the fact that the trial court's intervention as evidenced by the orders of protection and visitation were necessary to prevent violence between the parties pending trial of this matter evidence that these parties have engaged in inappropriate marital conduct. Additionally, although the parties dispute when it began, it is not disputed that Ms. Roedel has engaged in an extra-marital relationship and that Mr. Roedel considers this relationship to have caused the "ultimate breakdown of the marital relationship."

Where a ground for divorce as enumerated in Tennessee Code Annotated § 36-4-101 has been proven, the courts may "grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone." Tenn. Code Ann. § 36-4-129(b)(2001). We accordingly have held that the court "should grant a divorce from the bonds of matrimony whenever there is evidence of continued misconduct by one or both spouses that makes continued cohabitation unacceptable." *Earls*, 42 S.W.3d at 883. The preponderance of the evidence in this case supports a finding that these parties have engaged in inappropriate marital conduct such that their cohabitation is unacceptable.

### *Holding*

In light of the foregoing, we reverse the judgment of the trial court and declare the parties to be divorced. This cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the Appellee, Kevin M. Roedel, and one-half to the Appellant, Stephanie R. Roedel, and her surety, for which execution may issue if necessary.

DAVID R. FARMER, JUDGE

-4-