IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2008 Session

## DIANE MARIE DEPIETTO GUILIANO v. ANTHONY PHILIP GUILIANO

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003282-06     Robert L. Childers, Judge**

_____

**No. W2007-02752-COA-R3-CV - Filed October 15, 2008**

_____

This appeal arises from a divorce action. The trial court found both parties guilty of inappropriate conduct and declared them divorced pursuant to Tennessee Code Annotated § 36-4-129. The trial court awarded 55 percent of the marital property to Wife and 45 percent to Husband; ordered the marital residence sold and awarded the equity to Wife; awarded Wife alimony *in futuro* in the amount of $4,000 per month; ordered Husband to pay for Wife's COBRA benefits and uninsured medical costs exceeding $45.00 until the benefits expire; and ordered each party to pay their own attorney's fees. Wife appeals. We modify the trial court's order with respect to life insurance and alimony as provided herein. The trial court's order is otherwise affirmed. This matter is remanded for further proceedings, if necessary, and entry of an order consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

David E. Caywood and Lucie Brackin, Memphis, Tennessee, for the appellant, Diane Maire Depietto Guiliano.

Adam Noah Cohen and Mitchell D. Moskovitz, Memphis, Tennessee, for the appellee, Anthony Philip Guiliano.

### OPINION

### Background

The parties to this divorce action, Diane Marie Depietto Guiliano, (Ms. Guiliano) and Anthony Philip Guiliano (Mr. Guiliano) were married in 1976. At the time of trial, Mr. Guiliano was 56 years of age and Ms. Guiliano was 55 years of age. The parties have two adult children, and Ms. Guiliano has not worked outside the home since their first child was born. In 2003, Ms. Guiliano

was diagnosed with Chronic Leukemia, which is now in remission. The parties appear to agree that this was not a happy marriage for a long time, and they separated in June 2006 after Ms. Guiliano discovered Mr. Guiliano was having an extramarital affair, an affair which Mr. Guiliano does not deny.

Ms. Guiliano filed a complaint for divorce in the Circuit Court for Shelby County on June 27, 2006. In her complaint, Ms. Guiliano alleged inappropriate marital conduct and irreconcilable differences as grounds for divorce. Mr. Guiliano answered in July 2007, admitting to irreconcilable differences and that he had been guilty of inappropriate marital conduct, but denying that his inappropriate conduct was the cause of the "dissolution" of the parties' marriage. In January 2007, the parties entered a consent order providing that Mr. Guiliano would pay temporary support in the amount of $9,000 per month to Ms. Guiliano. The consent order provided that Ms. Guiliano would pay the expenses for the parties' marital residence and condominiums in Florida and car payments and insurances, including insurance for Mr. Guiliano and the parties' daughter. The agreement required Mr. Guiliano to borrow from his life insurance policies to pay the balance of $5,648 on Ms. Guiliano's credit card, and required him to pay medical co-payments exceeding $30.00. In March 2007, Mr. Guiliano filed an emergency petition for the sale of the parties' marital residence in Germantown. In his petition, Mr. Guiliano asserted the parties were "approaching a financial crisis;" that the parties' Germantown home had a fair market value of approximately $900,000; that Ms. Guiliano had acknowledged that she had no desire to remain in the home; and that it was no longer practical for her to reside alone in a 6,400 square foot home. In May 2007, the trial court ordered the matter held in abeyance pending final disposition of the cause in July 2007.

The matter was heard by the trial court in July 2007. In August 2007, the trial court entered a final decree of divorce incorporating the transcript containing its findings of fact and conclusions of law. In the final decree, the trial court found both parties had been guilty of inappropriate marital conduct and declared them divorced pursuant to Tennessee Code Annotated § 36-4-129. The court divided the marital property and awarded the net proceeds from the pending sale of the parties' marital home to Ms. Guiliano. Mr. Guiliano was ordered to pay Ms. Guiliano alimony *in futuro* in the amount of $4,000 per month. The trial court ordered Mr. Guiliano to pay for COBRA insurance coverage for Ms. Guiliano for as long as such coverage was available. It also ordered Mr. Guiliano to pay for Ms. Guiliano's medical and dental co-payments exceeding $45.00, and for prescriptions not covered by insurance during the period in which COBRA coverage was available. The trial court ordered that Ms. Guiliano would be solely responsible for her medical insurance and costs upon the expiration of COBRA benefits. Each party was ordered to pay their own attorney's fees. In September 2007, Ms. Guiliano filed a Tennessee Rules of Civil Procedure rule 59 motion to alter or amend the judgment to address two outstanding medical bills. The parties entered a consent order on the motion in November 2007. The trial court entered final judgment in the matter on November 19, 2007, and Ms. Guiliano filed a timely notice of appeal to this Court.

### *Issues Presented*

Ms. Guiliano raises the following issues, as we succinctly reword them, for our review:

-2-

(1)     Whether the trial court erred by not awarding Ms. Guiliano alimony *in futuro* in the amount of $8,000 per month.

(2)     Whether the trial court erred by not ordering Mr. Guiliano to pay for health insurance for Ms. Guiliano upon the expiration of COBRA benefits.

(3)     Whether the trial court erred by not ordering Mr. Guiliano to pay for Ms. Guiliano's uninsured health and dental expenses.

(4)     Whether the trial court erred by not ordering Mr. Guiliano to provide life insurance to secure his alimony obligations.

(5)     Whether the trial court erred by not ordering Mr. Guiliano to pay Ms. Guiliano's attorney's fees.

(6)     Whether the trial court erred in awarding a divorce to both parties rather than to Ms. Guiliano on grounds of inappropriate marital conduct.

### Standard of Review

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Thus, we may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). However, if the trial court fails to make findings of fact, our review is *de novo* with no presumption of correctness. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App.1995). We review a trial court's determinations on matters of witness credibility with great deference and will not re-evaluate a trial judge's credibility determinations unless they are contradicted by clear and convincing evidence. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

### Award of Divorce

We first address Ms. Guiliano's assertion that the trial court erred by declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129 and by not awarding her an absolute divorce on the grounds of inappropriate marital conduct. This Court previously has engaged in a lengthy discussion of the social developments that precipitated the enactment of section 36-4-129. *See Earls v. Earls*, 42 S.W.3d 877, 881-83 (Tenn. Ct. App.2000). We see no reason to repeat that discussion here, other than to note that the section gives the trial courts the ability to declare parties divorced when it is clear that the conduct of one or both of the parties "makes continued cohabitation unacceptable" without assigning fault to one party. *Id.* at 883. In this case, the trial court found that, although Mr. Guiliano's admitted extramarital affair was inappropriate and precipitated the filing of the complaint by Ms. Guiliano, both parties had engaged in inappropriate conduct throughout the

marriage. Upon review of the record and the briefs submitted by both parties, it is clear that this was an unhappy marriage and that both parties contributed substantially to its demise. We cannot say the evidence preponderates against the trial court's finding that both parties had engaged in conduct rendering continued cohabitation unacceptable. We affirm on this issue.

*Alimony*

We next turn to Ms. Guiliano's assertion that the trial court erred in failing to award her alimony *in futuro* in the amount of $8,000 per month. In her brief to this Court, Ms. Guiliano devotes a considerable portion of her argument to discussing the various types of alimony and to demonstrating that alimony *in futuro* is warranted in this case. However, we observe that Mr. Guiliano has not objected to an award of alimony *in futuro*. Thus, we turn to whether the record demonstrates that the trial court erred in awarding alimony *in futuro* in the amount of $4,000 per month.

Without citing to the record, Ms. Guiliano asserts that Mr. Guiliano's annual gross salary is approximately $250,000 per year. Her argument, as we understand it, is that Mr. Guiliano earns approximately $125,000 per year from Crown Labs, a bonus of $30,000 per year, and an additional $100,000 per year as a partner with APG Marketing International, LLC ("APG"). Ms. Guiliano asserts Mr. Guiliano's income from APG is demonstrated by its partnership income tax returns for 2003, 2004, and 2005. She further asserts that Mr. Guiliano's ability to pay alimony in the amount of $8,000 per month is demonstrated by his ability to pay temporary alimony in the amount of $9,000 per month while this matter was being litigated.

Mr. Guiliano, on the other hand, asserts he began working with Crown Labs in 2005, after the failure of APG. He asserts that when he began working at Crown Labs, APG was grossing $4,000 per month from one client, and that he had to pay all business expenses from this amount. He argues that Ms. Guiliano has unrealistically added his income from APG for the years 2003 and 2004, prior to his employment with Crown Labs, to his post 2005 salary at Crown Labs. He further asserts that although he was paying $9,000 in temporary support while this matter was being litigated, this amount provided for the parties' joint expenses, including the martial home and investment property in Florida which were included in the property division. He further asserts he was living rent-free in his employer's basement, and that many of the expenses paid for out of the temporary support amount are now his sole responsibility.

It is well-settled that the appropriateness of an award of alimony depends on the facts and circumstances of each case, with the need of the recipient spouse and the obligor spouse's ability to pay being the primary considerations. *E.g., Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). When determining the type and amount of an alimony award, the court must balance several statutory factors, including those enumerated in section 36-5-121 of the Tennessee Code. The type and amount of an alimony award are largely within the discretion of the trial court. *Burlew*, 40 S.W.3d at 470. This Court is not inclined to alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

-4-

Upon review of the record, we note that the trial court made well-considered findings in this case based on the evidence presented at trial and in light of the applicable statutory factors. The trial court found that Mr. Guiliano has an earning capacity of approximately $175,000 per year, and that Ms. Guiliano has an earning capacity of approximately $25,000 to $40,000 per year. We cannot say the evidence preponderates against the trial court's findings, particularly with respect to Mr. Guiliano's income in light of the tax returns contained in the record. We affirm except as otherwise modified below.

### Health Insurance and Medical Expenses

We next turn to Ms. Guiliano's assertion that the trial court erred by failing to order Mr. Guiliano to provide Ms. Guiliano with health insurance after the expiration of COBRA benefits and to pay for all of Ms. Guiliano's uninsured medical and dental expenses. As noted above, the trial court ordered Mr. Guiliano to pay for COBRA benefits for as long as they are available to Ms. Guiliano, and to pay Ms. Guiliano's uninsured medical expenses exceeding $45 during this period. In the argument section of her brief to this Court, Ms. Guiliano asserts, in essence, that despite the property division awarding her 55 percent of the parties' property, including liquid assets in the amount of approximately $600,000, and the award of $4,000 per month in alimony, it is unfair to expect her to pay for an undetermined amount of uninsured medical expenses in light of the fact that she suffers from chronic Leukemia. Ms. Guiliano fails to cite to any law, however, to support her proposition that she may be awarded an indefinite sum to pay for an indefinite and indiscernible amount of medical expenses. She further fails to cite to any evidence in the record which would demonstrate that she is insurable in light of her medical condition, or that would indicate the likely cost of such insurance.

The Tennessee Code provides that the physical condition of the parties, including a chronic debilitating disease, is one of the many factors to be considered by the court in determining whether an award of alimony is appropriate and, if so, the nature, amount, and duration of the award. Tenn. Code Ann. § 36-5-121(i)(5)(2005). The Code further provides that the court may direct a party to pay the health insurance premiums for the other party "in whole or in part, for such duration as the court deems appropriate." Tenn. Code Ann. § 36-5-121(j)(2005). An order requiring one party to pay the health insurance premiums of the other is regarded as an award of alimony and is subject to the provisions contained in section 36-5-121(a). *See Dospil v. Dospil*, No. M2006-01596-COA-R3-CV, 2007 WL 3332849, at *8 (Tenn. Ct. App. Nov. 8, 2007) (*no perm. app. filed*). Section 36-5-121(a), in relevant part, authorizes the court to award alimony in a definite amount which that court may fix in "monthly, semimonthly, or weekly installments, or otherwise, as the circumstances may warrant." Tenn. Code Ann. § 36-5-121(a)(2005). It further authorizes the court to enforce the award "by any appropriate process of the court having jurisdiction." *Id.*

We are not insensitive to the fact that Ms. Guiliano's unfortunate medical condition presents physical, emotional, and financial challenges, and likely will affect her ability to work. We also are not insensitive, however, to the fact that, as Ms. Guiliano acknowledged at oral argument, she may be uninsurable and her future medical expenses are inestimable. As we recently noted in *Dospil v.*

*Dospil*, the court may order an obligor spouse to obtain and pay the fixed premiums for health insurance for the recipient spouse. However, if the obligor spouse is unable to provide insurance because the recipient spouse proves uninsurable, an order requiring the obligor spouse to pay the recipient's indefinite medical expenses exceeds the penalty authority provided in section 36-5-121(a). *Dospil*, 2007 WL 3332849, at *8. Additionally, because the award of health insurance premiums is an award of alimony, the award must be considered under the overall penumbra of need and ability to pay.

Upon consideration of the entire record in this case, including Ms. Guiliano's need and Mr. Guiliano's ability to pay, we believe an award to Ms. Guiliano of an amount equal to the current cost of COBRA benefits upon the expiration of those benefits is warranted. Thus, we modify the alimony award to Ms. Guiliano to provide for an increase in alimony in an amount equal to the current cost of COBRA benefits upon the expiration of those benefits. We remand for a determination of that amount and for an order reflecting this modification.

### Life Insurance

Ms. Guiliano asserts the trial court erred in failing to order Mr. Guiliano to obtain life insurance to secure his alimony obligation. In his brief to this Court, Mr. Guiliano states that he does not object to insuring his alimony obligation with a policy of life insurance, but that Ms. Guiliano has failed to specify how much insurance she is requesting. Accordingly, we remand the matter to the trial court for a determination of an appropriate amount of life insurance to be obtained by Mr. Guiliano to secure his alimony obligation.

### Award of Attorney's Fees

We finally turn to Ms. Guiliano's assertion that the trial court erred by ordering each party to pay their own attorney's fees. An award of attorney's fees in a divorce case is treated as an award of alimony. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002) (citations omitted). When determining whether an award of attorney's fees is appropriate, the trial court must consider the statutory factors used when considering an alimony request, but need is the primary factor. *Id.* An award of attorney's fees is appropriate when one spouse is disadvantaged and does not have sufficient resources with which to pay those fees. *Id.* at 513. The questions of whether to award attorney's fees, and the amount thereof, are left largely within the discretion of the trial court. *Id.* In light of the property division and alimony award in this case, we are satisfied that Ms. Guiliano has sufficient resources with which to pay her attorney's fee. We affirm. Ms. Guiliano's request for attorney's fees on appeal are denied.

### Conclusion

We affirm the trial court's order declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129. We modify the award of alimony so as to award Ms. Guiliano alimony *in futuro* in the amount of $4,000 per month until the expiration of COBRA benefits currently provided

by Mr. Guiliano, and alimony *in futuro* in the amount of $4,000 plus an amount equal to the present cost of COBRA benefits thereafter. Mr. Guiliano consents to securing life insurance to secure his alimony obligation, thus it is unnecessary for us to address whether the trial court erred by failing to order him to do so. We affirm the trial court's determination that each party shall pay his/her attorney's fees. We remand this matter to the trial court for further proceedings, if necessary, to determine an appropriate amount of life insurance to be obtained by Mr. Guiliano, and for entry of an order consistent with this Opinion. Ms. Guiliano's request for attorney's fees on appeal is denied. Costs of this appeal are taxed one half to the Appellee, Anthony Philip Guiliano, and one-half to the Appellant, Diane Marie Depietto Guiliano, and her surety, for which execution may issue if necessary.

 

 

_____
DAVID R. FARMER, JUDGE