IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 16, 2024 Session

**ALLISON COOPER v. TONY COOPER**

**Appeal from the Chancery Court for Scott County**
**No. 11544   Elizabeth C. Asbury, Chancellor**

_____

**No. E2023-01374-COA-R3-CV**

_____

This post-divorce appeal concerns the trial court's classification, valuation, and equitable division of marital property. Following our review of the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Melanie Stepp Lane, Jamestown, Tennessee, for the appellant, Allison Cooper.

Charles Patrick Sexton, Oneida, Tennessee, for the appellee, Tony Cooper.

**OPINION**

**I.      BACKGROUND**

The following facts are mostly undisputed and established by the statement of the evidence and trial exhibits in the appellate record. Allison Cooper ("Wife") and Tony Cooper ("Husband") married in 2001, at the ages of 23 and 47, respectively. They shared one child who had reached the age of majority by the time of this litigation. Wife transported the child to school when the child was younger, cooked meals for the family, and took care of the family's finances. Wife worked primarily as a homemaker during the marriage, except for five years during which she was employed by HBD and Walmart. Husband retired from employment during the marriage. After 21 years of marriage, Wife filed in the Scott County Chancery Court ("trial court") an amended complaint for divorce on October 31, 2022. Husband answered the amended complaint on December 21, 2022.

The parties' most valuable asset was their home, a rustic cabin in Oneida, Tennessee. Husband owned the home for some years prior to the marriage and testified that he spent approximately $65,000 to build it. Once it became the marital home, Wife cleaned it, purchased its furniture and appliances, helped Husband with lawn care, and assisted with maintenance and projects. Both parties improved upon the home throughout the marriage. For instance, Wife used a $5,000 gift from her parents to purchase flooring which her uncle helped Husband install. Husband believed the $5,000 gift was given to both him and Wife, as a couple. The parties built an addition to the home, installed new windows, and replaced the roof. Husband used his retirement funds to improve the home, including by adding a garage with a gravel floor. Husband testified that the home was rough, had below-average quality, was in an undesirable area, and lacked curb appeal due to the substandard housing of the neighbors. The only testimony about the home's value on the date of the marriage was Husband's opinion that it was worth $58,000 to $60,000 at that time. In Husband's opinion, the home's value at the time of the divorce was $80,000. At the time of the divorce, the marital home was 1,500 square feet. Wife owed a $2,000 debt to Green Sky for the windows and $5,000 to Discover Card for the furniture and appliances, and some personal items. Otherwise, there was no debt on the home. Upon separation, Husband remained in the marital home, while Wife moved into a furnished log home owned by her parents.

During their marriage, the parties acquired two additional parcels of land adjoining their home. Wife testified that she purchased a 1.18-acre lot using her own money and titled it in the names of both parties. Husband purchased a 7.52-acre lot using funds from his retirement and titled it in his name. These two parcels were only accessible via the land on which the marital home sat.

The parties also acquired cars. Wife drove a Honda which, according to her testimony, was a gift from her parents. By contrast, Husband recalled that Wife paid her mother for the Honda. She purchased a Chevrolet prior to the marriage, but she and Husband purchased parts for it and installed the parts together over the years. Wife testified that she and Husband purchased from family members a Nissan that was worth much more than the $5,000 they paid for it.

Following a hearing on March 23, 2023, the trial court declared the parties divorced on stipulated grounds by decree entered May 3, 2023. The trial court found that although Husband owned the home prior to the marriage, there had been "modifications and changes to the value of the real property that may display a marital interest to be determined at a further hearing." Accordingly, the court permitted Wife additional time to have the marital home appraised by a certified real estate appraiser. The trial court awarded Wife the title to four vehicles: a 2015 Honda; a 2005 Kia; a 1984 Chevrolet; and a 1983 Chevrolet.

Husband was awarded title to a 2006 Nissan. The parties owed no debt on the vehicles. The trial court reserved "the allocation of equity in the personal property received by each party," including the cars, and the "disposition and separation of any real property" for a future hearing.

On May 30, 2023, Wife filed in the trial court a single-family residential appraisal. In that document, a certified real estate appraiser used a sales comparison approach to opine that the home, together with the adjacent two tracts of unimproved land, had a market value of $245,000. The appraiser opined that the home was in "average" condition given its age, and that the structure was "low quality" with "minimal finishes and fenestration." He further opined that "[t]he excess land (8.7 acres) has a market value of $43,500."

On July 10, 2023, the action proceeded to a final hearing. Wife entered the appraisal as an exhibit. She testified that the marital home was worth $200,000, but offered no testimony about its value on the date of the marriage. The trial court entered its opinion on July 28, 2023. The court classified the 2005 Kia, 1984 Chevrolet, and 1983 Chevrolet as Wife's separate property. The 2015 Honda previously awarded to Wife was classified as marital property with a $13,000 value. The court found that a Kawasaki Rhino in Wife's possession was worth $5,000 and classified it as marital property. The 2006 Nissan previously awarded to Husband was classified as marital property with an $8,000 value.

As for the unimproved real estate, the court classified the two parcels of land adjacent to the home as marital property. Noting that there was no testimony about the present value of these parcels, the court valued them at $43,500, as appraised, ordered that Husband retain the tracts, and ordered that Wife would receive $21,750 for her portion.

As for the home, the trial court cited Tennessee Code Annotated section 36-4-121 and found that Wife had an interest in the increase of the home's value during the marriage because both parties acknowledged that she substantially contributed to its maintenance and preservation. The court credited the real estate appraiser's opinion about the home's quality and divided each party's interest as follows:

> The Court affixes the value of the [marital home] on the date of the marriage at $60,000. The Court affixes [its] value . . . on the date of divorce at $85,000. Thus, the increase in value during the marriage is $25,000. Any additional increase in value of the property is due to mark[et] conditions rather than the substantial contributions of Wife or Husband to the maintenance and preservation of the property during the marriage. The Court affixes Wife's interest in this increased value at $10,000.

[B]oth parties agreed that the preference was that Husband be awarded all right, title, and interest in and to the (3) tracts of real property. In order to effectuate that reality, Husband owes to Wife the following: $21,750 for her interest in the two (2) unimproved tracts and $10,000 for Wife's interest in the increased value to the house/land tract. Wife owes Husband $5,000 to balance the equities in the motor vehicles. Thus, Husband owes Wife $26,750 for her interest in the real property. Husband shall be solely responsible for payment of the indebtedness due and owing for the windows.

The court also ruled that whoever kept the furniture must pay any remaining credit card debt on it. The trial court's opinion was incorporated into a property settlement decree entered September 25, 2023. Wife appealed.

## II.     ISSUE

We restate the issue on appeal as follows: Whether the trial court erred in its classification, valuation, and equitable division of the marital estate.

## III.     STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

## IV.     DISCUSSION

During a divorce proceeding, the classification of whether property is either marital or separate property is a question of fact to be determined by the trial court upon consideration of all relevant circumstances. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009). Generally, marital property is "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to

the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(2)(A). "'Marital property' includes income from, and any increase in the value during the marriage of, property determined to be separate property . . . if each party substantially contributed to its preservation and appreciation[.]" Tenn. Code Ann. § 36-4-121(b)(2)(B)(i). Separate property is defined, in part, as "all real and personal property owned by a spouse before marriage, including, but not limited to . . . property acquired by a spouse at any time by gift, bequest, devise or descent[.]" Tenn. Code Ann. § 36-4-121(b)(4)(A), (D).

Once marital property has been valued, the trial court is to divide it in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1)(A). A division of marital property does not require that it be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Courts are directed by statute to divide marital property equitably "without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1)(A). A trial court's decision must be guided by the factors in Tennessee Code Annotated section 36-4-121(c), but the decision is not a mechanical one and is not rendered inequitable because it is not precisely equal, or because both parties did not receive a share of each piece of property. *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). The trial court has broad discretion when classifying and dividing the marital estate, and its findings are entitled to great weight on appeal. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). Unless a trial court's decision concerning the classification or division of property is contrary to the preponderance of the evidence or is based on an error of law, courts will not interfere with the trial court's decision on appeal. *Id*.

Wife assigns as error the trial court's inclusion of the 2015 Honda in the division of the marital estate. She explains that the Honda was gifted to her by her mother and should have been deemed her separate property. Our review of the statement of the evidence reveals that Husband and Wife's testimony differed on this point. Husband recalled that the Honda was not a gift because Wife paid her mother for it. On this issue, the trial court credited Husband's testimony over Wife's when classifying the car as marital property. "Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court." *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (citing *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991)). Here, the evidence does not preponderate against the court's finding.

Additionally, Wife argues that the court improperly classified her $5,000 credit card debt as her separate debt when it was used to buy furnishings for the marital home. As Husband correctly states in his brief, the trial court did not assign Wife's credit card debt as her separate debt. Rather, the court ordered that the party in possession of the furnishings would be responsible for the debt. The record implies that Husband kept the furniture, and

the property settlement decree specifies that Husband shall compensate Wife for the "original cost" of the home's furniture that was charged to Wife's credit card. We discern no error on this issue.

Wife further asserts that the trial court improperly valued the marital home. She suggests that a value of $200,000 is comparable to the valuation of similar properties in the area. The trial court considered Wife's testimony that the home was worth $200,000 as of the date of divorce, but specifically noted that she offered no testimony about its value on the date of the marriage. Again, the only testimony about the home's value on the date of the marriage was Husband's opinion that it was worth $58,000 to $60,000 at that time. In Husband's opinion, the home's value at the time of the divorce was $80,000. The real estate appraisal that the trial court considered opined that the entire property, including the two adjacent parcels, had a market value of $245,000. However, the appraiser did not opine on the home's previous value on the date of the marriage. The trial court elected to value the home at $60,000 on the date of marriage and $85,000 on the date of divorce. As noted in *Barton v. Barton*, "[T]he value of a marital asset is determined by considering all relevant evidence regarding value. If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence." *Barton v. Barton*, No. E2019-01136-COA-R3-CV, 2020 WL 6580562, at *9 (Tenn. Ct. App. Nov. 10, 2020) (internal citations omitted). Because the values that the trial court placed on the marital home are within the range of values presented by competent evidence, we decline to second-guess the court's decision on this issue. *Id.*

Lastly, Wife maintains that any increase in the home's value is marital property and should be equitably divided between the parties. Upon review, we find that this is exactly what the trial court did. The trial court's decision to award Wife a $10,000 interest in the $25,000 increase in the home's value was guided by the statutory factor which concerns:

> The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role[.]

Tenn. Code Ann. § 36-4-121(c)(5)(A).

Based on the record, we cannot say that the trial court's classification, valuation, and equitable division of the marital estate is contrary to the preponderance of the evidence. With all of the above considerations in mind, we affirm the court's September 25, 2023 order.

## V.    CONCLUSION

We affirm the trial court's judgment.  The case is remanded for such further proceedings as are necessary and consistent with this opinion.  Costs of the appeal are taxed to the appellant, Allison Cooper.


_____
JOHN W. McCLARTY, JUDGE