# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 20, 2023 Session

## LOUISE ANN SEXTON v. MICHAEL BRYANT SEXTON

**Appeal from the Chancery Court for Knox County**
**No. 195468-2          Richard B. Armstrong, Jr., Chancellor**

_____

**No. E2023-00136-COA-R3-CV**

_____

The Chancery Court for Knox County ("the Trial Court") found in this divorce action that Michael Bryant Sexton ("Husband") was the sole owner of Furious Properties, LLC and that he had purchased two Knox County real properties and deeded them to Furious Properties, LLC.  The Trial Court accordingly found that the entire interest in Furious Properties, LLC constituted marital property subject to equitable division and awarded the two Knox County properties to Louise Ann Sexton ("Wife").  The Trial Court ordered Husband or a representative of Furious Properties, LLC to convey the entire interest in the Knox County properties by quitclaim deed to Wife within thirty days of the entry of the judgment.  Husband's issues relate primarily to the property division.  To the extent the Trial Court awarded property of a non-party LLC to Wife, we reverse and remand for the Trial Court to clarify its award, while acknowledging that the Trial Court may have intended to award Husband's interest in Furious Properties, LLC, rather than the LLC's properties themselves, to Wife.  We further modify the Trial Court's judgment to reflect that the Trial Court granted the parties a divorce on stipulated grounds and to remove language granting the parties a divorce on the ground of irreconcilable differences.  We affirm the balance of the judgment.  We deny Wife's request for attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Modified in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

C. Scott Taylor and Jon C. Fromke, Knoxville, Tennessee, for the appellant, Michael Bryant Sexton.

Chadwick B. Tindell and Michael R. Franz, Knoxville, Tennessee, for the appellee, Louise Ann Sexton.

**OPINION**

**Background**

On March 14, 2018, Wife filed a petition for divorce against Husband in the Trial Court, alleging the ground of irreconcilable differences. Both parties signed a "Notice of Automatic Statutory Injunction" pursuant to Tenn. Code Ann. § 36-4-106(d). In June 2019, Wife filed an amended petition for divorce, adding an alternative ground of inappropriate marital conduct. In November 2019, Husband filed an answer to Wife's amended petition for divorce. Husband agreed that irreconcilable differences had developed between the two parties but denied being guilty of inappropriate marital conduct.

In May 2021, Wife filed a "Motion for Temporary Injunction and Accounting," seeking to restrain Husband from disposing of inventory or other automobile parts at his business, "Sexton Auto Salvage," and to provide an accounting of "all parts or cars or other inventory sold" since the parties' separation. Wife alleged in pertinent part:

> During the course of the parties' marriage, [Husband] operated an auto salvage yard known as Sexton Auto Salvage . . . . [Husband's] ownership in this business is in whole or in part marital property, subject to division.

> Upon information and belief, portions of Sexton Auto Salvage have been shut down, but [Husband] and/or his family members are in the process of liquidating and selling inventory, including automobile parts and crushed cars for salvage. The[r]e are hundreds of cars and parts still located at the business.

(Paragraph numbering omitted.) Wife concomitantly filed a separate request for inspection of Sexton Auto Salvage pursuant to Tennessee Rule of Civil Procedure 34. An agreed order was entered providing, in part, that the parties agreed that Sexton Auto Salvage "may represent marital property" and that Husband would be enjoined from continued liquidation of inventory unless he provided a detailed accounting to Wife at least seven days prior to sale.

In September 2021, Wife filed a "Verified Petition for Contempt and Appointment for Receiver," making the following allegations:

Upon information and belief, inventory, either crushed from auto parts or otherwise has been sold from Sexton Auto Salvage over the past few months, all without any report to [Wife]. [Husband] has previously claimed Sexton Auto Salvage is closed and doing no business. With no report to [Wife], [Husband's] actions are in direct contradiction of the Orders of this Court. [Husband's] failure to obey the Orders of this Court is willful, knowing, and intentional.

Approximately one week ago, [Wife] learned that a lawsuit had been filed in Union County Chancery Court by [Husband's] mother as trustee for a named trust seeking to collect an unspecified debt from [Husband], his brother Jimmy Franklin Sexton, and Michael B. Sexton d/b/a Sexton Auto Parts. [Husband] and his brother conduct business under both the names, Sexton Auto Salvage and Sexton Auto Parts, these businesses being one and the same. Herein, the business is referred to as Sexton Auto Salvage. [Husband] offered no resistance to this lawsuit and allowed a default judgment to be entered. As a result of the default judgment, an execution sale was scheduled by the Union County Sheriff for Friday, September 10, 2021. Counsel for [Wife] successfully obtained an Order in the Union County case stopping the sale of the property owned by Sexton Auto Salvage. Upon inspection of the collection lawsuit filed by [Husband's] mother, it was discovered that there was no proper service of process, the business was incorrectly identified in the lawsuit, among other defenses to the unspecified debt purportedly owed by Sexton Auto Salvage. [Wife] believes the failure of [Husband] to offer any defense to this defective lawsuit brough[t] by his mother was intentional and is an effort to allow the disposal of marital property in which [Wife] claims an interest in order to defeat [Wife's] marital interest in such property. Such actions or inaction by [Husband] is in direct contravention of the statutory injunctions issued in this case requiring that no party to this case allow the dissipation or disposal of marital assets.

\* \* \*

In addition to the business known as Sexton Auto Salvage, [Husband] owns two (2) lake lots on Norris Lake located in Union County, Tennessee. [Wife] claims a marital interest in the two (2) lake lots. Upon information and belief, [Husband] has allowed the logging of timber on the two (2) lake lots and has received the profits from same. This logging would have all been done during the pendency of this divorce, again in direct contravention of the statutory injunctions issued in this case prohibiting the dissipation or disposal of marital property without

- 3 -

agreement of both parties or order of the Court.  This action by [Husband] in violating this Court's orders was willful, knowing, and intentional.

(Paragraph numbering omitted.)  Based on these allegations, Wife sought a court order requiring Husband to defend the collection law suit in Union County and the appointment of a receiver to manage Husband's interest in Sexton Auto Salvage.  She also sought sanctions against Husband "in the form of returning any monies received from assets sold, plus payment of all costs, including attorney's fees, incurred by" Wife, in the halting of the "Sheriff sale" in Union County and in the filing of the petition for contempt.

The Trial Court entered an order appointing John Newton as a receiver to investigate and make findings related to Husband's business interests, including:  (1) the suit initiated by Husband's mother and alleged debt owed to Husband's family trust; (2) the logging and sale of logs from the two lake lots; and (3) the operations of Sexton Auto Salvage, Sexton Auto Parts, or any business related thereto.  The Trial Court also ordered Husband to defend the collection suit by the "Sexton Family Trust" in Union County.

Wife filed a motion to compel discovery claiming that while Husband had responded to her second set of interrogatories and requests for production of documents, his responses were deficient.  These deficiencies ranged "from failing to provide addresses and telephone numbers related to identified parties to failing to give any explanation with regard to various companies in which [Husband] claim[ed] an ownership interest."  The Trial Court granted this motion.  Wife thereafter filed a motion for sanctions pursuant to Tennessee Rule of Civil Procedure 37, alleging that Husband still had failed to provide complete answers to her interrogatories.

Wife then filed a motion to authorize a receiver to liquidate assets of "Furious Investments, LLC."  According to Wife, Husband owned an interest in five parcels of real estate in Union County, all of which were purchased while the parties were married and living together.  The parcels of real estate were purchased with a "check from Michael Sexton d/b/a Furious Investments" in the amount of $16,643.54 and $10,000.00 in cash from marital funds.  Wife alleged that the check made "no reference to any limited liability company and clearly state[d] Furious Investments [wa]s a trade name used by" Husband.  Wife presented the following averments:

> [Husband] in this case claims that these properties are owned by Furious Investments, LLC.  However, Furious Investments, LLC was not formed until months after the purchase of the properties.  It is admitted that the Deeds from the Clerk & Master resulting from the tax sale and purchase of these properties is made to Furious Investments, LLC.  However, Furious Investments, LLC was not in existence at the time the property was purchased.

[Husband] in this case claims that Furious Investments, LLC is owned by [Husband] and his brother, Stacey Sexton, in equal shares. However, despite repeated requests in discovery, [Husband] has failed to produce any document to indicate that claimed equal ownership, how the properties were conveyed from [Husband] to the alleged limited liability company or the consideration paid.

Further, Furious Investments, LLC has been dissolved as a limited liability company by the Tennessee Secretary of State and is no longer in existence. Despite repeated requests in formal discovery, [Husband] has failed to explain where the assets went after the dissolution of Furious Investments, LLC.

The Court previously appointed a Receiver in this case to manage and/or liquidate certain business interests of [Husband]. The appointed Receiver is John Newton. Mr. Newton has in process the liquidation and sale of certain assets of [Husband], notably the auto salvage business owned by [Husband] and his brother.

Due to the disputed ownership and refusal of [Husband] to cooperate in discovery by producing documents confirming ownership of the assets of the former limited liability company known as Furious Investments, LLC, this Court should order the liquidation and sale of [Husband's] interest in the assets previously owned in whole or in part by Furious Investments, LLC. [Husband's] former interest in the limited liability company and/or these real properties is marital property subject to division by this Court. Due to [Husband's] failure to produce sufficient documentation concerning his ownership interest, the Receiver should be charged with determining [Husband's] ownership interest and liquidating [Husband's] interest in order that it can be properly divided by this Court in the division of marital property.

(Paragraph numbering omitted.) Based on these allegations, Wife asked the Court to direct Mr. Newton to determine the ownership of the real properties located in Union County owned by "Michael Sexton d/b/a Furious Investments, LLC, Michael Sexton, Stacey Sexton and/or 'Furious Investments, LLC'" and to liquidate and sell Husband's interest in said properties.

In September, 2022, the Trial Court entered an order, providing that Mr. Newton would be authorized to investigate and determine the interest in and properties owned by Furious Investments, LLC and Furious Properties, LLC. The Court explained: "Specifically, the Receiver shall determine what properties are owned and what

- 5 -

individuals and/or companies actually own the properties at present." In addition, the Court reserved the issue of sanctions against Husband pending further hearings.

In October, 2022, the receiver, Mr. Newton, filed his report. Mr. Newton made the following findings related to Furious Investments, LLC and Furious Properties, LLC:

## II. FURIOUS PROPERTIES, LLC AND INVESTMENTS

Parcels of unimproved properties were purchased by Michael and Stacey Sexton in a 2018 tax sale. They set up an LLC called Furious Properties in 2018 so Clerk and Master could deed the lots to the LLC.

Receiver has basic public record information available on the parties' real property which will be summarized in Exhibit B, attached. Also, the testimony of the two LLC members, Michael Sexton and brother, Stacey Sexton.

Receiver confirms that those appear to be validly titled to the LLC as stated in the approximate value based on the summaries from these sources. The parties have not obtained any appraisals to date.

## IV. SUMMARY/CONCLUSION

\* \* \*

The Furious Properties and Furious Investments, LLC entities has lapsed but, it appears that there were funds generated by both Michael Sexton and Jimmy Sexton to initiate purchases at tax sales of various properties. The LLC had lapsed and was only reinstated under the state records in August of 2022 on or about August 22, 2022. It appears that the owners are 50/50, Michael Sexton and Jimmy Sexton. Attached as Exhibit B to this is a summary of the property addresses and approximate values based on tax records and opinions of the two owners based upon the original purchase prices and/or current estimates of market value. This is not a formal appraisal and appraisals have not been obtained at this time. It is unlikely the parties intend to obtain appraisals prior to the trial date and will base their valuations based solely on personal opinions of the owners and parties. The Receiver believes the estimates of value made by such parties are reasonable and within the range of value of such properties in the current market.

At trial, Mr. Newton submitted a supplemental report and acknowledged that he had overlooked Furious Properties, LLC. He apparently only considered Furious Investments, LLC and its properties in his initial report.

The trial was on October 19, 2022, and the Trial Court heard testimony from Mr. Newton, Wife, and Husband. Before presenting proof, Wife presented as an exhibit a list of stipulations that the parties agreed to beforehand. The stipulations included, in pertinent part:

1. Grounds for divorce exist pursuant to Tenn. Code Ann. 36-4-129.

2. The following real property is titled to the listed party and the accompanying Deed represents the conveyance of said property (acreage is approximate):

1. Furious Investments, LLC – title owner of:

a. Tanglewood Parcel 54 (10.9 acres, Union County, Norris Lake lot). Deed attached as Exhibit "1";

b. Tanglewood Parcel 53 (12.21 acres, Union County, Norris Lake lot). Deed attached as Exhibit "2";

c. Ousley Gap (9.88 acres, Union County parcel). Deed attached as Exhibit "3";

d. Wood Lane Parcel 14.04 (2.94 acres, Union County). Deed attached as Exhibit "4"; and

e. Wood Lane Parcel 14.06 (2.03 acres, Union County). Deed attached as Exhibit "5".

2. Furious Properties, LLC – title owner of:

a. 6633 Bay Circle Drive (Knox County, improved by house). Deed attached as Exhibit "6"); and

b. 10342 Rather Road (Knox County). Deed attached as Exhibit "7").[1]

---

[1] 10342 Rather Road is spelled in various ways throughout the record, sometimes being referred to as "Rother Road" or "Rother Drive." We will spell and refer to the property as 10342 Rather Road, as it appears in the parties' stipulations.

- 7 -

The parties also agreed to admit the depositions of Husband's brothers, Jimmy Franklin Sexton and Stacy Sexton.[2]

At the outset of Mr. Newton's testimony, he presented a supplemental report, which was entered into evidence as an exhibit. Mr. Newton explained:

> Just to give some context, since this was not in my report, I noticed that I apparently overlooked in making the report regarding the Knox County properties, those are owned in a company called, "Furious Properties." The Union County properties are, "Furious Investments."

Mr. Newton's supplemental report provided the tax value and market value for each of the Knox County properties owned by Furious Properties, LLC. His report also listed the owners of Furious Properties, LLC as "Michael Sexton & Unknown." Mr. Newton testified that the property at 6633 Bay Circle, Knoxville, TN was purchased at a tax sale in November 2020 and that the property at 10342 Rather Road, Knoxville, TN was purchased at a tax sale in September 2019.

Mr. Newton testified that the Knox County properties were deeded to Furious Properties, LLC. With regards to the ownership of Furious Properties, LLC, Wife's attorney and Mr. Newton had the following exchange:

> [Wife's attorney:] And the Reports that -- we've stipulated that they are the owners of the two in our stipulations that were filed in court. Mr. Newton, in your Report, I noticed down here it says, "Michael Sexton, one-half," assumes he is a 50 percent LLC member. Were you able to determine that that's an actual fact or is that just an assumption that you put in here with respect to these two properties?
>
> [Mr. Newton:] I don't have his transcript from his deposition to specifically recall if he testified he owned a 50 percent interest, but -- that's why I put that assumption down there. But I did notice and I looked at the tax records for Knox County that in this year, 2022, he paid the taxes on both of these properties. It showed the receipt. It showed Michael Sexton. It's public record, so again, I don't -- that would have to be established

---

[2] Stacy Sexton's name is spelled in various way throughout the record, sometimes being spelled as "Stacey." We will spell his name as "Stacy," as this is how his name is spelled in Husband's appellate brief.

through the remaining record in this case, whether he owns that or not.

[Wife's attorney:]    In your experience with real property, the title owner, is that the exclusive legal way to prove who's actually -- holds the interest in properties?

[Mr. Newton:]    Well, it's, you know, the underlying LLC records, possibly. But again, I think that the deeds that are definitely deeded from Clerk and Master of Knox County, recorded two previous properties. So, if -- and there's no liens. I looked at the -- at the Knox County Register of Deeds. There's no liens on the properties either, so.

[Wife's attorney:]    Mr. Newton, would you agree with me that a court of equity, such as the Chancery Court, could look at various indicia of ownership and control over properties to determine different parties' interests in properties beyond just who is on the deed?

[Mr. Newton:]    Yes. I mean, I would agree with that. That's certainly within the Court's, you know, legal authority.

Husband testified that he used his personal funds from his portion of the sale of the marital residence to purchase the Knox County properties and that Furious Properties, LLC owns those two properties. According to Husband, his father is the sole owner of Furious Properties, LLC. He further stated that he had purchased the properties for his father but acknowledged that his father never paid him back for the properties. He confirmed that he spent a "pretty good amount of money trying to renovate and repair" the house on Bay Circle with funds from Furious Investments, LLC. He also confirmed that he pays the taxes on the Knox County properties.

Husband testified that there was a period in time in which both Furious Investments, LLC and Furious Properties, LLC had been dissolved or rendered inactive by the Tennessee Secretary of State because "we forgot to pay the yearly fee, file the paper." Husband confirmed that he had both LLCs reinstated in August 2022. He paid the reinstatement fees to the Secretary of State with funds from his own bank account. During his testimony, Husband requested that the Trial Court consider the Knox County properties as his separate property.

After the parties filed opposing proposed findings of fact and conclusions of law, the Trial Court entered a final judgment of divorce on January 3, 2023, and an amended

final judgment on January 11, 2023. Regarding the ground for the divorce, the Trial Court concluded:

> The parties announced at the beginning of trial that they had agreed to stipulate to the grounds for divorce pursuant to Tenn. Code Ann. § 36-4-129(a) and the parties shall be granted a divorce accordingly. *Tr. p. 7. Lines 18-22.* There are no children at issue in this divorce. The only issues before the Court are the Declaration of Divorce and the Equitable Distribution of Mar[it]al Property (real and personal) as well as Business Assets. Thus, the Court hereby GRANTS the DIVORCE to both parties as to Tenn. Code Ann. § 36-4-101(14) Irreconcilable Differences between the parties.

With respect to the Knox County properties, the Trial Court found the following:

### FURIOUS PROPERTIES, LLC

> The parties have stipulated, and the Court finds that Furious Properties, LLC is the title owner of two (2) parcels of real property in Knox County, Tennessee, specifically 6633 Bay Circle Road and 10342 Rother Drive. The Court also finds that the Bay Circle property is improved by a house, based on the report(s) of the Receiver and testimony of [Husband]. *Trial Exh. 4; Tr. p. 159, Lines 9-11.* These are the only two (2) assets of the LLC.

> [Husband] claimed in his testimony at trial that Furious Properties, LLC was wholly owned by his father. [Husband] offered no evidence whatsoever of this alleged ownership by his father. However, [Husband] did testify, on cross-examination, that he used his personal funds to buy the properties[,] that he personally organized and maintained the LLC, that [Husband] further spent personal funds to renovate and repair the properties and that [Husband] also has paid all the real estate taxes for the properties. *Tr. p. 158, Lines 21-24; Tr. p. 160, Lines 4-24; Tr. p. 163, Line 15; Tr. p. 160, Lines 1-3.* [Husband] further testified his father was not at the sale when the properties were purchased and has never paid (or repaid) him for any of these purchases. *Tr. p. 167, Lines 9-11; Tr. p. 159, Lines 5-8; Tr. p. 167, Lines 12-15.* [Husband] also claimed that he used the funds he received from the sale of the parties' former marital residence to buy these properties. However, [Husband] could not produce any record or document to trace these funds to the purchase of the LLC properties. Counsel for [Wife] further pointed to bank records, which [Husband] was forced to admit, showing proceeds of the sale of the marital residence going into the LLC account, but then two (2) months later those same funds being

- 10 -

transferred to another of [Husband's] bank accounts. *Tr. p. 215, Lines 4-21; Tr. p. 217, Lines 2-6.* [Husband] could not explain where those funds went or how they were purportedly used to buy the Knox County properties and offered no evidence showing those funds were used.

The Court is permitted to consider all indicia of ownership in concluding the ownership of the properties for the purpose of an equitable division of marital property. *See* Tenn. Code Ann. § 36-4-121. Based on all the evidence presented, the Court concludes the entire interest in Furious Properties, LLC is the property of [Husband] and is marital property subject to equitable division, further addressed below.

The Trial Court awarded the two Knox County properties titled to Furious Properties, LLC to Wife, stating the following:

The Court recognizes that Furious Properties, LLC is the title owner of both the Knox County properties. However, it is necessary to divide these properties for an equitable division in this case. To accomplish this, [Husband] or an authorized representative shall, on behalf of Furious Properties, LLC convey all the interest in 10342 Rother Road and 6633 Bay Circle to [Wife] by Quit Claim Deed within thirty (30) days of the entry of Judgment in this case.

The Trial Court also granted Wife's request for attorney's fees, in part due to its finding that Husband had been "extremely difficult," noting that a receiver had to be appointed to obtain information about Husband's business interests and that Husband had refused to answer discovery in a timely manner. Husband timely appealed.

## Discussion

Although not stated exactly as such, Husband raises the following issues on appeal: (1) whether the Trial Court erred in awarding real properties owned by Furious Properties, LLC to Wife, (2) whether the Trial Court erred in appointing a receiver over Furious Properties, LLC's assets, and (3) whether the Trial Court erred in granting the parties a divorce based upon the ground of irreconcilable differences. Upon our review, we reverse the Trial Court's award of real properties owned by Furious Properties, LLC to Wife and remand for the Trial Court to clarify its award, acknowledging that the Trial Court may have intended to award Husband's interest in Furious Properties, LLC to Wife. We further modify the Trial Court's judgment to remove language from the judgment granting the parties a divorce based upon irreconcilable differences. We otherwise affirm the Trial Court's judgment, including his appointment of a receiver/special master.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

## A. Award of LLC Properties

Husband contests the Trial Court's classification of Furious Properties, LLC as marital property, first arguing that the evidence was insufficient to prove that he had a membership interest in the LLC. In reviewing the Trial Court's classification of Furious Properties, LLC, we note that "[t]rial courts are vested with a great deal of discretion when classifying and dividing the marital estate, and their decisions are entitled to great weight on appeal." *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). As this Court has previously explained:

> Dividing marital property is a three-step process: first, the court must "identify and classify the parties' marital and separate property"; second, the court must "value the marital property (and, when appropriate, the separate property)"; third, the court must "divide or apportion the marital property." *Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042, at *10 (Tenn. Ct. App. Apr. 27, 2006) (Koch, J., concurring) (citing *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998)). "Marital property" is defined in part as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(1)(A). By contrast, the Code defines "separate property" as including, among other things, "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b)(2).

> "Questions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual." *Bewick v. Bewick*, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at *7 (Tenn. Ct. App. Feb. 13, 2017) (quoting *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007)). "As such, we employ the familiar standard of review outlined in Rule 13(d) of the Tennessee Rules of Appellate Procedure." *Id.* (citing *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005)); *see also Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009).

*Barton v. Barton*, No. E2019-01136-COA-R3-CV, 2020 WL 6580562, at *2-3 (Tenn. Ct. App. Nov. 10, 2020).

Husband first argues that the evidence preponderates against the Trial Court's finding that Husband owned a 100% interest in Furious Properties, LLC. Husband asserts that the only evidence presented at trial related to the ownership of Furious Properties, LLC was Husband's testimony that the entity was entirely owned by his father and Mr. Newton's report and testimony that assumed Husband owned a 50% interest in the LLC. According to Husband, his testimony on this point was uncontroverted. We disagree.

In its final judgment, the Trial Court made the following findings of fact and conclusions of law related to the Furious Properties, LLC:

> The parties have stipulated, and the Court finds that Furious Properties, LLC is the title owner of two (2) parcels of real property in Knox County, Tennessee, specifically 6633 Bay Circle Road and 10342 Rother Drive. The Court also finds that the Bay Circle property is improved by a house, based on the report(s) of the Receiver and testimony of [Husband]. *Trial Exh. 4; Tr. p. 159, Lines 9-11.* These are the only two (2) assets of the LLC.
>
> [Husband] claimed in his testimony at trial that Furious Properties, LLC was wholly owned by his father. [Husband] offered no evidence whatsoever of this alleged ownership by his father. However, [Husband] did testify, on cross-examination, that he used his personal funds to buy the properties[,] that he personally organized and maintained the LLC, that [Husband] further spent personal funds to renovate and repair the properties and that [Husband] also has paid all the real estate taxes for the properties. *Tr. p. 158, Lines 21-24; Tr. p. 160, Lines 4-24; Tr. p. 163, Line 15; Tr. p. 160, Lines 1-3.* [Husband] further testified his father was not at the sale when the properties were purchased and has never paid (or repaid) him for any of these purchases. *Tr. p. 167, Lines 9-11; Tr. p. 159, Lines 5-8; Tr. p. 167, Lines 12-15.* [Husband] also claimed that he used the funds he received from the sale of the parties' former marital residence to buy these properties. However, [Husband] could not produce any record or document to trace these funds to the purchase of the LLC properties. Counsel for [Wife] further pointed to bank records, which [Husband] was forced to admit, showing proceeds of the sale of the marital residence going into the LLC account, but then two (2) months later those same funds being transferred to another of [Husband's] bank accounts. *Tr. p. 215, Lines 4-21; Tr. p. 217, Lines 2-6.* [Husband] could not explain where those funds

- 13 -

went or how they were purportedly used to buy the Knox County properties and offered no evidence showing those funds were used.

        The Court is permitted to consider all indicia of ownership in concluding the ownership of the properties for the purpose of an equitable division of marital property. *See* Tenn. Code Ann. § 36-4-121. Based on all the evidence presented, the Court concludes the entire interest in Furious Properties, LLC is the property of [Husband] and is marital property subject to equitable division, further addressed below.

Based upon our review of the record, we conclude that the Trial Court found that Husband owned a 100% interest in Furious Properties, LLC and that the evidence does not preponderate against this finding.

Although the Trial Court did not make a specific credibility finding, the Trial Court clearly did not accredit Husband's assertion that his father owned Furious Properties, LLC. *See Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 824-25 (Tenn. Ct. App. 2012) ("The trial court in this case did not make express credibility findings. However, a trial court's finding on credibility may be implied from the manner in which the trial court decided the case."). Furthermore, despite Husband's claim on appeal that his testimony regarding his father's ownership of the LLC was uncontroverted, this argument disregards Husband's own testimony evincing his ownership of the LLC and its properties. As the Trial Court found, Husband testified that he had used his personal funds to purchase the two properties titled to Furious Properties, LLC and that his father was not at the sale of the properties. Although Husband testified that he purchased the properties for his father, he acknowledged that his father never paid him back for the properties. Again, the Trial Court clearly did not accredit Husband's testimony on this point.

Husband testified that he pays the taxes on the two properties. He further explained that when the Tennessee Secretary of State's office designated Furious Properties, LLC as "inactive," he applied and paid for the LLC's reinstatement. He testified that Furious Properties, LLC was inactive because he forgot to pay the yearly fee. Husband also testified that he spent his own money on renovations and repairs to the house on Bay Circle. Although he initially testified that his father paid for a foundation repair to the house, Husband later conceded that money had been withdrawn from his bank account for this repair after being shown a bank statement by Wife's counsel.

During oral argument, Husband's counsel pointed out that Husband's father signed "tax deeds" for the two properties owned by Furious Properties, LLC. Even so, this fact alone does not preponderate against the Trial Court's finding that Husband owned Furious Properties, LLC which owned the two properties at issue. *See Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)

- 14 -

("[F]or the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect."). The Trial Court's numerous findings of fact related to Husband's ownership, again based primarily upon Husband's own testimony and his lack of credibility as determined by the Trial Court, are not outweighed by Husband's father's signature on these two documents.

Furthermore, despite arguing that Furious Properties, LLC is owned solely by his father, Husband testified that he had used his separate funds from the sale of the marital home for the purchase of the two properties and that they should, therefore, be considered separate property, apart from the marital estate. In fact, in his proposed findings of fact and conclusions of law, Husband did not suggest that the two properties or the LLC were owned by his father. Rather, Husband proposed the following finding:

> [Husband's] interest in the properties purchased by Furious Properties, LLC being 6633 Bay Circle Drive and 10342 Rather Road is separate property under Tennessee Law. The properties were purchased with the proceeds of the sale of the marital home where both parties received an equal amount from the sale. The money from the sale of the marital home was intended to be separate and therefore anything purchased with said money would be considered separate and apart from the mar[it]al estate under Tennessee Law.

Therefore, Husband claimed some interest in these two properties "purchased by Furious Properties, LLC" by arguing they should be classified as his separate property, further supporting the Trial Court's implicit credibility finding and its finding that Husband owned the LLC which owned the properties.

Husband also argues that Mr. Newton's report and testimony failed to establish his ownership interest insofar as Mr. Newton testified that he had only assumed that Husband owned a 50% interest in Furious Properties, LLC and acknowledged Husband's ownership interest would "have to be established through the remaining record in this case, whether he owns that or not." However, the Trial Court did not rely on Mr. Newton's testimony in concluding that Husband was the owner of the entire interest in Furious Properties, LLC but rather relied on Husband's own testimony. We agree, as far as it goes, that Mr. Newton's testimony would not have established Husband's ownership interest at 100%, but this point is irrelevant based upon the Trial Court's findings supported by Husband's own testimony and the record.

Husband also argues that the Trial Court erred by considering all indicia of ownership in its finding that Husband owned Furious Properties, LLC. Husband presents the following argument:

The Trial Court explained that Husband's purchase of the properties, his payment of the property taxes, and his use of personal funds to renovate and repair the properties, allowed it to conclude that the entire interest in Furious Properties, LLC was Husband's property, subject to an equitable division. *Id.* This is a plainly incorrect application of the statute resulting in a clear error of law. None of these cited behaviors by the Husband establishes his ownership of a membership interest in the LLC which might correctly be considered marital property. *See* Tenn. Code Ann. § 48-249-501 of the Tennessee Revised Limited Liability Company Act. A third-party cannot acquire a membership interest in a Limited Liability Company by simply spending personal funds on certain expenses of the entity, and a Trial Court cannot impose such a membership interest on the entity in order to effect an equitable distribution of the marital estate. In doing so, the Trial Court has essentially directed a nonparty corporate entity to be responsible for payment of Husband's obligations to Wife.

(Footnote omitted.) We find Husband's argument unavailing. The Trial Court did not conclude that Husband had <u>acquired</u> a membership interest by actions such as purchasing the property, paying the property taxes, or using his personal funds to renovate and repair the properties. Rather, the Trial Court concluded that Husband's actions, as evidenced by Husband's own testimony, sufficiently proved that Husband was the sole owner of Furious Properties, LLC. Husband has offered insufficient evidence in the record to preponderate against this finding. We discern no error in the Trial Court's analysis and accordingly affirm its finding that Husband owned the entire interest in Furious Properties, LLC.

Husband next argues that the Trial Court erred in ordering Husband or an authorized representative of Furious Properties, LLC to convey the two properties to Wife. Husband contends that the Trial Court had no authority to award properties owned by a non-party LLC. Wife, on the other hand, argues that ordering Husband to "deed the properties held in the name of the LLC to Wife rather than ordering Husband to transfer his membership interest in the LLC to Wife is a distinction without a difference." Wife suggests that if this Court finds that the Trial Court over-stepped its authority by awarding the LLC properties to Wife, then this Court should simply modify the Trial Court's judgment to either (1) order Husband to convey to Wife his membership interest in Furious Properties, LLC or (2) order Husband to pay Wife the sum of $189,000 to compensate her for the fair market value of the two properties she was awarded.

We agree with Husband that the Trial Court did not have authority to award to Wife the two properties owned by Furious Properties, LLC. This Court has previously explained in a similar divorce case that a court does not have jurisdiction over non-party LLCs or their assets, rather only over the parties' ownership interests in the LLCs themselves. *See Barton v. Barton*, No. E2019-01136-COA-R3-CV, 2020 WL 6580562,

at \*5 (Tenn. Ct. App. Nov. 10, 2020).  In *Barton v. Barton*, this Court reversed a trial court's award to the wife of a portion of a specific asset owned by a non-party LLC, of which the husband owned a 100% interest.  *Id.*  This Court also reversed the trial court's imposition of liens upon the property of the non-party LLCs.  *Id.*  In reversing the trial court, this Court explained:

> There is no debate that the LLCs were not parties in this case, even though Vanquish Worldwide filed a motion to intervene, which was denied. Thus, the court did not have jurisdiction over these entities and their assets, only the parties' ownership interest in the LLCs themselves.  We, therefore, conclude that the real property owned by the LLCs could not be subjected to a lien to guarantee payment of Husband's alimony obligation, and we vacate those portions of the trial court's judgment granting Wife a lien on those parcels of real property owned by the LLCs.

> Next, Husband argues that the trial court erred in finding that Wife has a vested interest in a $32.8 million contractual claim that his business, Vanquish Worldwide, was pursuing against the U.S. Government based on the LLC's work for the government in Afghanistan.

> Husband argues that the contractual claim is the property of a non-party, asserting that the claim belongs solely to the LLC.  Though the trial court recited that "Plaintiff, Eric W. Barton, individually and as President and CEO of Vanquish Worldwide, LLC has a contingent contractual claim," the evidence does not support such a finding.  There was no evidence admitted at trial showing that Husband had pursued this appeal in his individual capacity.

> Because the assets of an LLC are separate from those of its members, we conclude that the contractual claim was not marital property and was therefore not subject to distribution to Wife.  We, therefore, vacate the trial court's award to Wife of any interest in the contractual claim of Vanquish Worldwide.

*Id.*  Moreover, Tenn. Code Ann. § 48-249-502(a) provides that a member of an LLC has "no interest in specific LLC property" and that "[a]ll property transferred to or acquired by an LLC is property of the LLC."  We, therefore, conclude that the Trial Court erred by awarding to Wife the specific properties owned by Furious Properties, LLC.

The evidence established that Furious Properties, LLC owned only these two pieces of property and that Husband owned the entirety of the interest in Furious Properties, LLC.  In this instance, an award of the properties to Wife may have the same practical effect as an award of Husband's interest in the LLC, but we cannot know that

- 17 -

for certain.  We, therefore, remand for the Trial Court to clarify its judgment consistent with the legal principles set forth in this Opinion, while emphasizing that the Trial Court does have the authority to award to Wife Husband's entire interest in Furious Properties, LLC even though it cannot directly award Wife property owned by Furious Properties, LLC.

## B.  Appointment of Receiver

We next address Husband's contention that the Trial Court erred by appointing a receiver for Furious Properties, LLC.  Husband primarily argues that Wife never sought a receivership for Furious Properties, LLC and that no service of any motion or notice of any hearing, pursuant to Tenn. Code Ann. § 29-40-103, was provided to Furious Properties, LLC.  However, we find that the Trial Court's appointment of and instructions to Mr. Newton were more akin to the responsibilities of a special master, at least with regard to Furious Properties, LLC.  Accordingly, we discern no reversible error in the Trial Court's decision to assign Mr. Newton to investigate Furious Properties, LLC and its holdings.

In its order appointing Mr. Newton as a "receiver," the Trial Court provided the following instructions:

> The Receiver appointed in this case, John P. Newton, shall be further authorized to investigate and determine the interest in and properties owned by Furious Properties, LLC and Furious Investments, LLC.  Specifically, the Receiver shall determine what properties are owned and what individuals and/or companies actually own the properties at present.

(Paragraph numbering omitted.)  Mr. Newton's responsibilities were therefore limited to merely investigating and determining the interest in and properties owned by Furious Properties, LLC.  In contrast, a true receiver is entrusted with the following duties: "safekeeping, collection, management, and disposition of property."  Tenn. Code Ann. § 29-1-103.  Although Mr. Newton was entrusted to sell and appraise the assets of Sexton Auto Salvage, Husband does not contest the appointment of Mr. Newton with regard to Sexton Auto Salvage. Mr. Newton was not granted the powers to safekeep, collect, manage, or dispose of any property owned by Furious Properties, LLC.

Furthermore, Husband contests only the Trial Court's determination that Husband owned a 100% interest in Furious Properties, LLC and its award of the two properties to Wife.  The Trial Court, however, did not rely on Mr. Newton's report in coming to this conclusion; rather, the Trial Court relied on Husband's own testimony and lack of credibility.  Therefore, any error that could be assigned to Mr. Newton's appointment with respect to Furious Properties, LLC is harmless.  We discern no reversible error in the Trial Court's appointment of Mr. Newton.

C.  Ground for Divorce

Husband next argues that the Trial Court erred by granting a divorce to the parties based upon irreconcilable differences.  We review a trial court's finding of grounds for divorce *de novo* upon the record, accompanied by a presumption of correctness.  *Hobbs v. Hobbs*, 987 S.W.2d 844, 846 (Tenn. Ct. App. 1998).  At the beginning of trial, the parties stipulated that grounds for divorce existed pursuant to Tenn. Code Ann. § 36-4-129(a), which provides the following:

> In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.

The Trial Court's judgment reflected this stipulation.  The Trial Court found:  "The parties announced at the beginning of trial that they had agreed to stipulate to the grounds for divorce pursuant to Tenn. Code Ann. § 36-4-129(a) and the parties shall be granted a divorce accordingly."

Nevertheless, the Trial Court went on to grant the parties a divorce also based on the ground of irreconcilable differences pursuant to Tenn. Code Ann. § 36-4-101(14).  Pursuant to Tenn. Code Ann. § 36-4-103(b) (West July 1, 2008 to March 5, 2020):  "No divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement . . . for the equitable settlement of any property rights between the parties."  In the present case, there was no such finding or written agreement for the equitable settlement of any property rights between Husband and Wife.  In a similar situation, this Court previously concluded:

> In the absence of the appropriate irreconcilable differences procedure and in the presence of stipulated commonly-alleged grounds, we must conclude that the trial court inadvertently listed irreconcilable differences as the ground for the [parties'] divorce.  No proof other than the stipulation was taken.  As a result the decree of the court below can only operate as a grant of divorce under Tennessee Code Annotated section 36-4-129.

*Mackie v. Mackie*, No. 01-A-01-9810-CV-00536, 1999 WL 675134, at *1 (Tenn. Ct. App. Sept. 1, 1999).  In *Mackie v. Mackie*, this Court found the trial court's listing of irreconcilable differences to be an "inadvertent" mistake and simply modified the Trial Court's judgment of divorce to reflect a stipulation of grounds for divorce instead of irreconcilable differences.  *Id.* at *2.  We likewise find the Trial Court's inclusion of the ground of irreconcilable differences to be an inadvertent mistake and accordingly modify the Trial Court's judgment to reflect that the divorce was granted upon stipulated

- 19 -

grounds, pursuant to Tenn. Code Ann. § 36-4-129, and remove the portion reflecting that the divorce was granted based upon the ground of irreconcilable differences.

### D. Attorney's Fees on Appeal

Wife requests that this Court grant her attorney's fees on appeal, arguing that Husband has made the divorce "much more difficult by refusing to cooperate in discovery and by attempting to dissipate assets." We deem Wife's request waived, however, due to her failure to designate this as an issue. *See Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("We consider an issue waived where it is argued in the brief but not designated as an issue."); *see also Barrios v. Simpkins*, No. M2021-01347-COA-R3-CV, 2022 WL 16846642, at *14-15 (Tenn. Ct. App. Nov. 10, 2022) (finding that the appellees waived their request for attorney's fees by failing to include a separate statement of the issues in their responsive brief, despite including the issue in their brief's table of contents). We also note that Husband's appeal was partially successful. We therefore deny Wife's request for an award of attorney's fees on appeal.

### **Conclusion**

Upon our review, we reverse the Trial Court's award of the properties owned by Furious Properties, LLC to Wife and remand for the Trial Court to clarify its judgment with instructions that it may only award Wife Husband's interest in Furious Properties, LLC, rather than the properties themselves. We further modify the Trial Court's judgment to grant the parties a divorce upon stipulated grounds and remove the language granting the parties a divorce based upon irreconcilable differences. We affirm the balance of the Trial Court's judgment. We deny Wife's request for attorney's fees on appeal. This matter is remanded to the Chancery Court for Knox County for further proceedings consistent with this Opinion and collection of costs below. Costs on appeal are assessed equally against the Appellant, Michael Bryant Sexton, and his surety, if any, and Appellee, Louise Ann Sexton.

_____
D. MICHAEL SWINEY, CHIEF JUDGE